JOSEPH MARINO, DEFENDANT IN ERROR, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, PLAINTIFF IN ERROR.

Submitted July 10, 1903—Decided November 10, 1903.

1. A railroad company, empowered to take, by condemnation, lands for building its road, was made subject to a duty to maintain, over or under its road, suitable wagon ways where their railroad intersected the land of an individual owner, so that he might pass the same. *Held*, that an owner of such intersected land had a right of way across the railroad appurtenant to each of his divided tracts, and that his right is not transmitted to a grantee of a portion of said lands lying only on one side of the railroad tracks.

2. Evidence that a railroad company made and maintained planking and other contrivances for a convenient wagon way over the railroad, where the railroad intersected lands of an individual owner and was built upon a portion of said lands condemned for the rail-

road use, and that people crossed the railroad on the wagon way thus maintained, will not, of itself, justify the inference that a public right of crossing was acquired by such user.

---

On error to the Supreme Court.

For the plaintiff in error, *Alvah A. Clark.*

For the defendant in error, *William V. Steele.*

The opinion of the court was delivered by

MAGIE, CHANCELLOR. The judgment of the Supreme Court brought here by this writ of error was entered upon a verdict directed in favor of the defendant in error on the trial of the issue in the Somerset Circuit.

It appears from the bills of exception returned with the writ that, at the close of the testimony, counsel for plaintiff in error moved the trial judge to direct a verdict in its favor. The motion was refused and an exception was duly taken and allowed to this refusal. One of the assignments of error is directed to that ruling of the trial judge, which is claimed to be erroneous.

The action was in tort. The defendant in error, by his declaration, grounded his right to recover damages upon the act of the plaintiff in error in obstructing a way, the right to use which defendant claimed as appurtenant to lands in his ownership.

The plea was the general issue.

The case was brought to trial upon the issue made by the pleadings, and it is obvious that, to maintain the action, defendant in error was required to present evidence sufficient to go to the jury that he had such a right of way as he had set up in his declaration.

Among the grounds presented to the trial judge in support of the motion to direct a verdict was one which challenged the sufficiency of the evidence relied on by the defendant in error to support the right of way set up by him in his declaration. If that evidence was insufficient, it was error to refuse

to direct a verdict for the plaintiff in error, and the exception brings into review the evidence on that subject.

The evidence contained in the bill of exceptions shows that the obstruction complained of was upon the railroad of the plaintiff in error and was occasioned by the elevation of its tracks above the level at which they had formerly been laid and maintained. Such elevation was made for some distance, and it affected the portion of those tracks laid upon lands which were the subject of condemnation by the Somerville and Easton Railroad Company under the right of eminent domain conferred upon that company under its charter, which was approved February 26th, 1847. *Pamph. L., p.* 128.

The condemnation under that act was in evidence; it took effect April 22d, 1848.

At that time one Caleb Miller was the owner of a tract of land of some acres across which the route of the railroad of the Somerville and Easton Railroad Company was located. The right of Caleb Miller to the lands within the located route was thereby condemned and taken by the railroad company for the purpose of constructing and maintaining its road across said Miller's lands. It appears that the lands condemned for the railroad route intersected said Miller's tract; and left him the owner of land on the north side and also of land on the south side of the condemned strip of land. By section 9 of the act above referred to it was enacted, "That it shall be the duty of the said company to construct and keep in repair good and sufficient bridges or passages over or under the said railroad or roads where any public or other road shall cross the same, so that the passage of carriages, horses and cattle on the said road shall not be impeded thereby, and also where the said road shall intersect any farm or lands of any individual to provide and keep in repair suitable wagon ways over or under said road, so that he may pass the same."

It is not open to doubt that, by the provision above quoted, there was imposed upon that railroad company a positive duty to provide and keep in repair a suitable wagon way over or under its railroad, so that Caleb Miller might pass the

same, and that the evident purpose of the act was to permit such an owner to have convenient access from and to such portions of his land as were intersected and separated by the railroad. By implication, any such owner acquired a right to use the way required to be maintained for such purpose.

It further appeared that the Somerville and Easton Railroad Company afterward became merged in the Central Railroad Company of New Jersey, the plaintiff in error. The latter company thereby became charged with the duty imposed on the former company by the provisions of section 9, above cited.

For the purposes of this case it may be assumed that the right of way vested in the owner of such intersected lands can be transmitted to his grantee of the whole of such lands, and perhaps to his grantee of portions of such lands lying on both sides of the railroad, and it may be assumed that the duty imposed on the railroad company would be owed respectively to such grantees. The case does not call for a judicial determination as to the right of such grantees, for it appears that the land of defendant in error, in respect of which he claims the right of way over the railroad, was acquired by him long after the condemnation, under mesne conveyances from Caleb Miller, and that his land is situated wholly upon the south side of the railroad tracks, and that he owns no part of the said Miller tract, situated on the north side of the railroad tracks.

Legislation requiring railroad and canal corporations to make and maintain crossings when the road or canal intersects and severs land of an owner, similar to that contained in section 9 of the Somerville and Easton Railroad Company's charter, is not infrequent in this state. Such acts have been the subject of judicial consideration, but the point involved in this case seems never to have been presented. In *Brearley* v. *Delaware and Raritan Canal Co., Spenc.* 236, a clause in the charter of that corporation was under consideration and the Supreme Court held that the duty imposed by the act was not due to an owner of lands who had conveyed to the company a strip of land intersecting his farm for the purpose of

constructing the canal. In *Perry* v. *Pennsylvania Railroad Co.*, 26 *Vroom* 178, a like construction was given to the same clause. It is observable that the clause in the canal company's charter, which required the building of a bridge between the intersected lands, so that the owner or owners and others might pass the same, seems to impose a broader duty than that imposed in the clause before us. In *Pipe Line Co.* v. *Delaware, Lackawanna and Western Railroad Co.*, 33 *Vroom* 254, the charter under which the defendant company was acting contained a clause in all respects like that now before us, but this court did not deal with its construction. The case turned upon the construction of a deed made to the company by the owner of lands traversed by the railroad, with a reservation requiring the grantee company to make and maintain a specified crossing under the railroad. It was held that the deed to the railroad company vested it with an interest greater than a mere easement, and amounting to a qualified fee, and that the reservation in the deed was a grant of a right of way between the two parcels of the grantor's land which were divided by the land granted to the company. The matter is dealt with on page 280 *et seq.*, and Chief Justice Depue there gives reasons for his conclusion, which are unanswerable.

The like reasoning is applicable to a way established under the duty imposed by section 9. It is a way between the lands of the same owner left on opposite sides of the railroad tracks. It is limited to those lands and not extended to other lands. Therefore, a grantee of a part of such lands lying wholly on one side of the intersecting railroad does not fall within the provisions of section 9 of the act above cited. The right reserved and the duty imposed by that section is only in favor of the person who owned the lands intersected by the railroad when the railroad right was acquired by condemnation, or his grantees of the whole, or a portion of such lands still intersected by the railroad.

It results that upon the issue made by the pleadings there

was no evidence to go to the jury, and it was erroneous to refuse the request for a verdict for plaintiff in error.

In the course of the trial evidence was admitted, without objection, which was deemed by counsel, and apparently by the trial judge, to support a conclusion that a public way had been created over the railroad at the point where the obstruction objected to had been made, and that such obstruction occasioned such special injury to defendant in error as to entitle him to his private right of action against plaintiff in error.

If an issue of this sort was actually presented and fully tried and correctly decided, it would be the duty of this court to amend and mould the pleadings so as to present such issue and then to affirm the judgment thereon. But without considering whether the evidence in question discloses a right to a private action in defendant in error because of such an obstruction to a public way, we are of opinion that there was no evidence to submit to a jury justifying a finding that a public way had been created at the place in question.

It appeared that the owner of the lands, or some part of the lands which had been Miller's, filed in the county clerk's office, some years after the condemnation, a map on which was delineated a street across the railroad tracks at the place where the obstruction complained of was made. There was some evidence that he made conveyances referring to the map thus filed. If it be assumed that those conveyances would have justified the inference that such owner dedicated his land within the delineated street to the public use as a highway, it is obvious that his dedication could affect only his own interest. It could not affect the interest of the railroad company acquired by condemnation or impose a public right upon or across the railroad tracks.

There was also evidence that the plaintiff in error had constructed and maintained planking and other convenient provisions for crossing at the place in question, and that many people were accustomed to cross over the railroad tracks where

these conveniences were provided. But these acts on the part of the railroad company will not justify the inference that it recognized a public user and subjected its railroad tracks to a public right of way. There was a duty imposed upon it to provide a suitable wagon way connecting the intersected lands.

The construction and subsequent maintenance of such a convenient crossing is referable to that duty, and in the absence of other evidence could not afford any indication of intent thereby to create a public way. The way which the railroad company was under a duty to maintain was in favor of the owner of the intersected lands or his grantees. It was not, however, limited to the particular person. The right to pass would inhere not only in the owner, but in those representing him, as his servants, his guests, &c. Manifestly, the railroad company would not indicate an intent to permit the public generally to pass this crossing by mere evidence that people had passed it. It was not bound to maintain a guard there and exclude from crossing those who were not authorized to cross. The failure to exercise the power of rejection, under the circumstances, would not, without other evidence, impose a public character upon the crossing.

Upon the evidence, there was no sufficient proof of a public way over the tracks of the railroad and amended pleadings would not be justifiable.

The result is that the judgment must be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VOORHEES, VROOM, GREEN, GRAY. 13.