CITY OF ATLANTA *v.* GEORGIA RAILROAD AND BANKING COMPANY.

1. Although for a period of time longer than twenty years a crossing over the tracks of a railroad company is used by persons and vehicles, the public will not acquire an easement by prescription unless the use has been adverse, exclusive, and under a claim of right, and not by permission of the owner. *Mayor &c. of Savannah* v. *Standard Fuel Supply Co.,* 140 *Ga.* 353, 358 (78 S. E. 906, 48 L. R. A. (N. S.) 469), and authorities cited.  Under the facts of this case the use of the crossing was neither exclusive nor adverse.

2. Dedication to the public of a use of land for a street rests upon the intent of the owner to make such dedication.  Where the dedication is not express, the acts of the owner relied upon to imply a dedication must be such as clearly indicate an intent to exclusively devote the property to use as a street. *Swift* v. *Lithonia,* 101 *Ga.* 706 (29 S. E. 12). *Savannah* v. *Fuel Co.,* supra.  There must also be an acceptance.  The facts of this case are not sufficient to show a dedication for public use.

3. Whether or not the charge of the court on the subject of equitable estoppel was a correct statement of the law, and whether that doctrine

was applicable to the issues on trial, the charge was not error requiring the grant of a new trial. The verdict was demanded by the evidence. None of the assignments of error show cause for a new trial.

No. 762.   January 14, 1919.

Equitable petition. Before Judge Pendleton. Fulton superior court. November 27, 1917.

The Georgia Railroad and Banking Company brought a petition against the City of Atlanta, in which it was alleged, that the railroad company owned a right of way from the eastern boundary of the city to Pryor Street, and across the particular strip of land lying between the point at which Yonge Street opens into Decatur Street and the boundary line between the right of way of the railroad company and what is known as Oakland Cemetery; that it was entitled to the exclusive use of this strip of land; and that this use was being interfered with by reason of the fact that the city was claiming the location in question to be a street, was prosecuting and threatening to prosecute its employees for failure to maintain an opening across its tracks at said point, and had passed an ordinance requiring the keeping of a watchman at said crossing. It prayed, that title to the strip of land named be decreed to be in it; and for injunction against the prosecution of its employees and against the enforcement of the ordinance requiring the keeping of a watchman. The defendant filed a cross-bill setting up its claim to the crossing based on dedication and prescription, and prayed for injunction against the railroad. The case has had the attention of this court on two previous occasions: 131 *Ga.* 94 (61 S. E. 1035); 134 *Ga.* 871 (68 S. E. 703). The final trial resulted in a verdict for the plaintiff. A motion for new trial was overruled, and the defendant excepted.

*J. L. Mayson* and *S. D. Hewlett,* for plaintiff in error.

*McDaniel & Black,* contra.

GILBERT, J. (After stating the foregoing facts.)

1, 2. The first and second headnotes require no discussion. The authorities cited are sufficiently elaborate upon the rulings therein made.

3. The railroad company showed title to the land by deed, and there was no evidence to show any reservation or qualification in the grant. The city set up an affirmative equitable plea based both upon prescription and dedication. These two principles are closely

analogous, but not identical. For a discussion see 8 R. C. L. 904, § 30. The City of Atlanta makes no claim that it has obtained the right to keep open the contested crossing by deed from the railroad company, or by express dedication and acceptance. It is not contended that the right has been acquired by condemnation under legislative authority, nor is it suggested that a street was laid out in pursuance of a municipal ordinance. Title by prescription rests upon strict law, and the burden of proof rests upon the prescriber to show affirmatively his right to maintain his adverse possession. And this is true when the prescription claimed is only to an easement. *McCullough* v. *East Tenn. etc. Ry. Co.*, 97 *Ga.* 373 (23 S. E. 838). This is especially true when the land is already used for public purposes, acquired under legislative authority. The power of disposition by a railroad company of its lands is limited, so that it may not disable itself from performing its public duties. It is a well-established rule that the requirements are much more stringent in the case of railroads than in the case of property not used for public purposes. In the case of railroads the facts in regard to intention, necessary to imply dedication, must be clear and unequivocal. 8 R. C. L. 890, § 14. Mr. Jones, in his work on Easements, § 425, says that the intention to dedicate must be made clearly to appear, and, if determined by acts, "they must be such acts as are inconsistent and irreconcilable with any construction except the assent of the owner of such dedication." Of course no such easement can be acquired, either by prescription or by dedication, where possession is exercised by the express or implied permission, or by the passive acquiescence or mere non-action, of the owner. A railroad may, by grant or express dedication, create an easement in the nature of a crossing across its tracks, where it is not prohibited by its charter, and where such action will not materially interfere with the proper performance of its charter duties, and the second use may be reasonably consistent with the first. A municipality may acquire such an easement by condemnation where the law has conferred express or implied authority. In the case of *City Council of Augusta* v. *Ga. R. &c. Co.*, 98 *Ga.* 161, 166 (26 S. E. 499), it is said: "A different result follows, however, when the enjoyment of the second use involves the practical extinguishment of the former, or renders its exercise so extremely inconvenient and

hazardous as practically to destroy its value. In such a case the right to enjoy the second use must rest upon express legislative authority, and will not be implied. The exercise of the second use under such circumstances would amount to a forfeiture of the first. Forfeitures, as a general rule, are not favored, will never be implied, and least of all where the effect would be to deprive one of a substantial right which he enjoyed under a valid subsisting legislative enactment." See also *Central Railroad* v. *Brinson, 70 Ga.* 207, 240; *Town of Poulan* v. *Atlantic R. Co., 123 Ga.* 611 (51 S. E. 657); Louisville & Nashville R, Co. *v.* Louisville, 24 L. R. A. (N. S.) 1213, 1219, notes (131 Ky. 108, 114 S. W. 743); 9 R. C. L. 773, note 19. Surely the easement could not be acquired indirectly by prescription or implied dedication under circumstances which would not permit acquirement directly by condemnation. A railroad company cannot do, or permit to be done, by non-action that which cannot be done expressly.

In the present case it is sought to establish a crossing over a right of way 110 feet in width, every available inch of which is occupied by railroad-tracks, including two main-line tracks, constituting a part of the "railroad yard" constantly used for the passage of trains and engines. Prescription or implied dedication in such a case could only be established where the right is clear and unequivocal, under a rule no less strict than that stated in the authority last cited. It appears from the evidence that a system of "railroad yards" begins at Central Avenue at the end of the old Union Station and extends to the round house at or near Inman Park. The yard system as a whole is composed of several units, each connected with and dependent upon the others. There is evidence showing that these tracks are connected with all of the yards and were so constructed as to make use of every available inch of ground. To maintain the crossing would cripple the yards about one third, and would require a total reconstruction of the yards, costing several hundreds of thousands of dollars. It would diminish the car room, interfere with the building and arranging of trains, continuously add to the expense thereof, and cause delay. The impairment would be substantial and for all time. The railroad has, from its inception, continuously exercised control and use of the right of way inconsistent with the intent to dedicate a street to permanent public use. The city introduced evidence

sufficient to show that for many years the public did cross at the point in question, that at times a watchman was stationed there to protect the public from accident, that at one time accommodation trains stopped there to discharge passengers, and other facts of similar character. The evidence of the city as a whole was not sufficient to measure up to the rule above stated, as to prescription, or as to a clear and unequivocal intention to dedicate, and to negative the theory of permission or passive acquiescence on the part of the railroad. Taken altogether, the evidence demanded a verdict for the plaintiff.

In a populous city, near its center, through a railroad yard where trains are constantly moving and shifting, where the entire width of the right of way is covered with tracks, a grade crossing must grossly impair the efficient use of the property as a railroad, and is necessarily dangerous and inconvenient to the public. Courts, as well as all persons of ordinary powers of observation, are obliged to take cognizance of these self-evident facts.

From a casual reading the decision in B. & W. R. Co. v. Waycross, 91 Ga. 573 (17 S. E. 674), might appear to conflict somewhat with the views above stated. In that case the railroad filed a petition for injunction, very much as in the present case. The City of Waycross also filed a cross-petition asking for an injunction against the railroad. It appears in that case that the railroad was built prior to the building of the city, and the roadway crossed a single track. The city, after its incorporation, laid out one of its principal streets across the track at the point occupied by the crossing. The railroad desired to build one additional track on its right of way, and the city, through its officers, interfered. An injunction was sought to prevent this interference. The injunction sought by the city was to prevent the building of the additional track. This court reversed the judgment, holding that the two uses were inconsistent. A reference to the pleadings will show that the petition filed by the railroad specifically alleged that its purpose and intention was not to obstruct the passage of persons and vehicles and property, nor to block up the avenue with cars, but was solely to furnish a connection for the passage of cars and engines running from its yard to the main line of the railway, and that the city was entitled to an easement across the railroad for a street, because it had laid out at that point a street

according to the plans of the city, and that the public actually had a right of crossing the tracks by an acquiescence amounting to a dedication. Thus it is obvious that the decision proceeded from the premise of an established easement, and was not concerned with whether such an easement could be established under the pleadings and evidence in that case.

*Judgment affirmed. All the Justices concur, except Atkinson and George, JJ., dissenting.*

BECK, P. J. I concur in the judgment of affirmance.

ATKINSON and GEORGE, JJ., dissenting. Applying the principles in *B. & W. R. Co.* v. *Waycross,* 91 *Ga.* 573 (17 S. E. 674), and *Southern Ry. Co.* v. *Combs,* 124 *Ga.* 1004 (53 S. E. 508), to the facts in this case, the judgment should be reversed.