[No. 2825.   Dec. 30, 1924]
# VILLAGE OF CLAYTON v. COLORADO & S. RY. CO.

### SYLLABUS BY THE COURT

1.   To establish an implied or common-law dedication to public use, the proof must be clear, convincing and unequivocal.

2.   Where the findings of the court and the undisputed evidence, tending to disclose the intent of the owner, as cogently support a conclusion that the intention was to devote the property to private use as they do a conclusion of dedication, the latter conclusion is error.

Appeal from District Court, Union County; Leib, Judge.

Suit by the Village of Clayton, against the Colorado & Southern Railway Company. From judgment for plaintiff, defendant appeals. Reversed and remanded, with directions.

O. P. Easterwood, of Clayton, and E. E. Whitted and J. L. Rice, both of Denver, Colo., for appellant.

H. B. Woodward, of Clayton, and Joseph Gill, of Albuquerque, for appellee.

### OPINION OF THE COURT

BOTTS, J.   The village seeks to enjoin the railway company from obstructing what the former claims is a public crossing over the latter's right of way tracks. The trial court granted the injunction and the company appeals.

The court bottomed its judgment on two grounds: (1) Dedication; and (2) estoppel. The latter ground may be disposed of quickly, since an examination of the record discloses that estoppel was not pleaded by the village, and therefore, is unavailable. Palmer v. Town of Farmington, 25 N. M. 145, 179 P. 227. This, however, will not work a reversal, since the judgment is still sufficiently supported by the dedication, if that be well founded.

There is no claim of an express dedication; but the court implies a dedication from the conduct of

the company. The material facts are uncontroverted. When the company's predecessor, some 30 years ago, constructed its railroad through the territory later and now occupied by the village, it crossed a trail which for about a year theretofore had been and was being used by the traveling public. No claim is made that the public had, up to that time, acquired any rights in the trail, or to a right of way for a public highway. As a part of the railway construction, a depot was built adjacent to the point of crossing, and crossing facilities provided, all of which have since been maintained by the company. Later a tract of land lying east of the railroad and opposite the crossing was platted by the owner for townsite purposes, and Chestnut street, as platted, intersected the company's right of way approximately at the crossing. Still later a tract of land on the opposite side of the railroad was platted by the owner for townsite purposes, and Monroe street, as platted, intersected the company's right of way approximately at the crossing. The two streets, however, are not directly opposite each other, the north line, extended, of one practically coinciding with the south line of the other. The line of travel, therefore, over the company's right of way, has never been at right angles to the tracks, nor, as we understand the record, does the village claim a full-width street over the right of way. Such a width, if claimed, would be very materially encroached upon by various structures erected from time to time by the company. In other words, the claim of the village is of a right to cross between these structures and from one street to the other. During all of this time the crossing has been used by the patrons of the company as a means of ingress and egress to and from its office, station, and warehouse, and has likewise been used by the general traveling public on Chestnut and Monroe streets.

These facts, in considerably more detail than here set out, were found by the court. In addition thereto, the court "found" that any use of the crossing by patrons of the company in receiving and discharging freight and express was incidental to the use of the

general public, and that the crossing was not originally established for the use or convenience of the patrons of the company, or to afford them access to its depot, but that the depot and platform were located conveniently to the road and crossing so they might be conveniently used by the general traveling public. These "findings" are merely deductions from the facts above stated, being otherwise unsupported, and are more properly conclusions to be considered along with and as a part of the court's conclusion of dedication. We shall so consider them.

[1] In order to show the establishment of a street by common law or implied dedication, it is essential to prove clearly, satisfactorily, and unequivocally that the owner of the land intended to donate it to the public for that use· Cordano v. Wright, 159 Cal. 610, 115 P. 227, Ann. Cas. 1912C, 1044; City of Clatskaine v. McDonald, 85 Or. 670, 167 P. 560; I. & G. N. R. Co. v. Cueno, 47 Tex. Civ. App. 622, 108 S. W. 714; Mayor, etc. , of Savannah v. Standard Fuel Co., 140 Ga. 353, 78 S. E. 906, 48 L. R. A. (N· S.) 469; O'Malley v. Dillenbeck Lumber Co., 141 Iowa, 186, 119 N. W. 601; C. & M. V. R. Co. v. Roseville, 76 Ohio St. 108, 81 N. E. 178; Harmon v. Lay, 169 Ky. 132, 183 S· W. .459; Doss v. Bunyan, 262 Ill. 101, 104 N. E. 153; Chicago v· C.ⁱ R. I. & P. R. Co.ⁱ 152 Ill. 561, 38 N. E. 768; Marino v. Cent. R. Co., 69 N· J. Law, 628, 56 A. 306; Atlanta v. Georgia R. & B. Co., 148 Ga. 635, 98 S. E. 83; State v. Hood, 143 Mo. App. 313, 126 S. W. 992; Bacon v. Boston & M. R. R., 83 Vt. 421, 76 A. 128; Stacy v. Glen Ellyn Hotel & Springs Co., 223 Ill. 546, 79 N. E. 133, 8 L. R. A· (N. S.) 966.

In the case last cited the court said:

"In order to constitute a dedication at common law it is essential (1) that there be an intention on the part of the proprietor of the land to dedicate the same to public use; (2) that there be an acceptance thereof by the public; and (3) that the proof of these facts be clear, satisfactory, and unequivocal. The vital and controlling principle is the animus domandi, and, whenever this is plainly and unequivocally manifested on the part of the owner of the soil, either by

formal declaration or by acts from which it may fairly be presumed, such as should equitably estop him from denying such an intention, the dedication, so far as the owner is concerned, is complete. Without such manifestation of intention by either of said modes, it cannot be said that a valid dedication is possible. To make a sufficient dedication the proprietor of the soil must devote the portion thereof intended for public use to such use, and on the part of the public it must be accepted and appropriated to that use. The acts on the part of the donor, and of the public, of an intention to dedicate, accept, and appropriate the lands to public use, where the dedication is relied upon to support some right, must be equally clear and unambiguous. A dedication is not an act of omission to assert a right, but is the affirmative act of the donor resulting from an active, and not a passive, condition of the owner's mind on the subject. A mere non-assertion of right does not establish a dedication unless the circumstances establish a purpose or intention to donate the use to the public."

Since the law will not permit private property to be taken for public use without compensation, unless it be clearly and unequivocally shown that the owner intended to donate it for that purpose, it would seem that the proof in this case is insufficient to support the court's conclusion of dedication. The village argues that the installation and maintenance of the crossing by the company at that point, with the long use made thereof by the general public, compels the inference that the company and its predecessor intended to dedicate its property to public use while the company says that the building and maintenance of its station facilities adjacent to the crossing, with the long use of the crossing made by the company and its patrons, necessarily leads to the inference that the crossing was installed and maintained for its private use and benefit; there being no duty on the part of the company to install the crossing at the time the railroad was constructed. One inference seems to be just as legitimate as the other. "It is just as probable that the crossing was maintained solely for the accommodation of the patrons of the road as for the public." C. & M. V. R. Co. v. Roseville, supra.

But if the inference of one intent be as strong as that of the other, then the proof of dedication is not clear, convincing, and unequivocal, as the rule re-

quires.   True it is that the court, after hearing the
evidence, drew the conclusion of dedication, but the
facts from which a conclusion one way or the other
may be legitimately drawn are not in dispute, so that
there is no occasion for an application of the rule that
this court will not disturb a finding of the trial court
made on conflicting evidence.   In such case the con-
clusion to be deduced therefrom is purely a question
of law.   Nolan v. N. Y., N. H. & H. R. Co., 70 Conn.
159, 39 A. 115, 43 L. R. A. 305; People v. Reed, 81
Cal. 70, 22 P. 474, 15 Am. St. Rep. 22.   In the latter
case the court said:

"From the findings of the fact the court concluded that
the property in controversy had been dedicated as and was
a public street of said city, and entered judgment accord-
ingly.

"This action was heard by this court, and decided in favor
of the appellants, on the ground that the facts found by the
court did not show a dedication.   People v. Reed, Sup. Ct.
Cal., December, 1888.   A rehearing was granted.   In their
petition for a rehearing, it was urged upon us that we had
overlooked or had not given sufficient weight to the thirty-
sixth finding, which they claimed was a finding of the ulti-
mate fact of dedication, and concluded the case on this ap-
peal against the appellant; the appeal being on the judgment
roll.   And they now attempt to forestall any inquiry into the
question whether the specific facts found constituted a dedi-
cation of the property in controversy as a street by the same
contention.   But, conceding that the finding is one of fact,
or, as counsel terms it, a 'conclusion of fact,' it is apparent
that the court below did not intend to cut off the right of the
appellant to test the sufficiency of the specific facts found
to show such dedication in the manner indicated.   This find-
ing is based upon the other facts found. It recites in terms that
'by the acts, facts, and matters above found, said premises
were by said parties dedicated,' etc.   It may be that if this
finding had stood alone, and had not been put in this ar-
gumentative form, it might have been upheld as a sufficient
finding of an ultimate fact.   But this cannot be so where the
facts are fully found, and the general finding of a dedication
is expressly drawn as a conclusion from such facts.   Counsel
say it does not appear that the court found all of the facts
proved.   But it does appear from the finding itself that it
was based entirely upon the facts found, and not, in whole
or in part, on facts proved but not found.   Therefore, if the
specific facts found do not support this one, which is a sum-
ming up of the others, the judgment should be reversed."

[2] Since the facts, undisputed and found by the
court, no more cogently support a conclusion that the

crossing was intended for the use and benefit of the general traveling public than they support a conclusion that it was intended for the private use and benefit of the company and its patrons, it inevitably follows that the court must have failed to recognize and apply the rule of law which requires the proof of an intention to dedicate to be clear, convincing, and unequivocal, and that thereby error was committed.

An examination of the cases already cited will disclose that, to constitute a dedication, there must be present, not only an intent or offer to dedicate on the part of the owner, but also an acceptance by the public. The court concluded from the facts that, in this case, an acceptance had been effected by long continued public user. That an acceptance may be so effected is supported by a great deal of authority. On the other hand, there is much authority which requires action on the part of the proper public authorities. But, since we have decided that there has been shown no intent or offer to dedicate, there is nothing to accept, and it becomes of no importance to determine in what manner or by what means an acceptance may be effected.

For the reasons stated, the judgment of the lower court should be reversed and remanded, with directions to dissolve the injunction and enter judgment for appellant company, and it is so ordered.

PARKER, C. J., concurs.

FORT, J., not having heard the argument, did not participate.