A00A2007. THOMPSON et al. v. McDOUGAL.
(546 SE2d 44)

POPE, Presiding Judge.

Howard and Arlene Thompson appeal the trial court's grant of summary judgment in favor of Victor McDougal which upheld McDougal's claim of a prescriptive easement over the Thompsons' property. The Thompsons assert that there are issues of fact.

Construed in favor of the Thompsons, the facts show that in 1963 McDougal leased property fronting on Lake Burton from Georgia Power Company. The property was not accessible by road at the time, but a logging road that ran across the Thompsons' property came to within 100 yards. At some point in the 1960s, Thompson graded a road or drive to connect the road to the McDougal property. In the late 1960s, Howard Thompson built a new road known as Lunsford Lane near the site of the old logging road. The portion of the road that connects Lunsford Lane to McDougal's property is now known as Imperial Lane. Imperial Lane runs across the Thompsons' property; Lunsford Lane crosses the Thompsons' property at points and at other points runs along the edge of their property and that of

---

[12] Id. at 377-378 (1).
[13] See *Wright*, supra at 835-837 (3).
[14] See *Baggett*, supra at 297-298 (3).

other landowners. McDougal initially used the old logging road but has been using Imperial Lane and Lunsford Lane to access his property since they were built. Up until 1984, McDougal visited the property only two or three times a year. After 1984, he and his family visited most weekends each summer and a few other times a year.[1]

OCGA § 44-9-1 provides that "[t]he right of private way over another's land may arise from . . . prescription by seven years' uninterrupted use through improved lands. . . ." But, use alone is insufficient to acquire prescriptive title:

> An owner's acquiescence in the mere use of his road establishes, at most, a revocable license. To establish a prescriptive easement over the private property of another pursuant to OCGA § 44-9-1, it is necessary to show that the owner was given notice that the user intended to appropriate it as his own.

(Citations and punctuation omitted.) *Eileen B. White & Assoc. v. Gunnells*, 263 Ga. 360, 362 (434 SE2d 477) (1993). And, without express notice, the most common and effective way of giving notice of a claim of right is to maintain and repair the way: "the cases clearly hold that the necessity of showing repairs is required in order to give notice to the landowner that the prescriber's use of the road is adverse and not permissive." *Chota, Inc. v. Woodley*, 251 Ga. 678, 679-680 (309 SE2d 132) (1983). Making repairs to the road constitutes notice to the landowner that the repairer intends to appropriate the road as his own. *Eileen B. White*, 263 Ga. at 360-361; *Rothberg v. Peachtree Investments*, 220 Ga. 776, 780 (2) (142 SE2d 264) (1965).

In this case, there is an issue of fact concerning whether McDougal used the roads with Howard Thompson's permission, which would not constitute prescriptive use. See OCGA § 44-5-161 (b). Although Thompson admits that he never gave McDougal express permission to use the roads and that McDougal never asked for permission, permission can be implied. *City of Atlanta v. Ga. R. &c. Co.*, 148 Ga. 635, 637 (3) (98 SE 83) (1919). And Thompson contends that permission was implied from the two parties' early encounters. When they first met, Howard Thompson helped McDougal take building supplies across his own land, and he says he never would have done so if he did not intend to allow McDougal to cross his land. Thompson

---

[1] We have been hampered in this case by the Thompsons' improper citations to the record. We remind the bar that citations must be made to the page numbers of the record itself — "the volume or part of the record or transcript and the page numbers that appear on the appellate records or transcript as sent from the court below," not to parts of the trial record such as "Affidavit of ___, p. 5" or "Deposition of Defendant, p. 42." See Court of Appeals Rule 27.

graded a road to connect McDougal's property to the rest of the road. Thompson also kept a cable across the old logging road secured with a lock, and McDougal had to get a key from someone in the Thompson family to get through.[2] Finally, McDougal twice testified in terms of permission when describing his own use of these roads. Both in his deposition and during a hearing he agreed that he just assumed that he had "permission" to use the roads. Including favorable inferences, these facts could be construed to mean that McDougal only had permission to use the roads.

Second, there is an issue of fact concerning whether McDougal maintained or otherwise performed repairs to the roads sufficient to put the Thompsons on notice of a claim of adverse use.[3] There is no clear evidence in the record that McDougal maintained the logging road during the early years. With regard to Imperial Lane, McDougal admits that he never spent any money maintaining it. Although he claimed that he had part of it graveled, his testimony makes it unclear whether he was simply working on the extension of Imperial Lane that is located on his own property. And even though he claims he paid Howard Thompson for the initial grading, Thompson denies being paid. Finally, McDougal claims he smoothed out erosion "at least once, maybe more" very near his property line and cut limbs from trees that would interfere with access to his property. But this evidence might not be sufficient to put Thompson on notice of an adverse claim of right to use the road. See *First Christian Church &c. v. Realty Investment Co.*, 180 Ga. 35, 39-41 (178 SE 303) (1934).

With regard to Lunsford Lane, there is a factual dispute regarding the significance of the evidence of repair. McDougal testified that he paid over $1,000 on one occasion and additional amounts on other occasions to repair that road. But McDougal simply gave a payment to other landowners and a homeowners association on Lunsford Lane who put the funds to use repairing that road, and there is no indication that the Thompsons were aware of McDougal's participation. It is not clear how repairs to Lunsford Lane apparently undertaken by other property owners should have put the Thompsons on notice that McDougal was an adverse user of Imperial and Lunsford Lanes. See

---

[2] Although Howard Thompson testified at a hearing that he had never blocked McDougal's passage and that the road had always been open, he later offered an explanation for this inconsistent testimony. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986) ("if a reasonable explanation is offered for the contradiction, the testimony will not be construed against the party-witness").

[3] Although permissive use of a way does not establish a prescriptive easement, the use may originate by permission and still ripen by prescription provided the user gives notice by repairs or otherwise that his use is adverse, i.e., that he is a prescriber and not a mere licensee. *First Christian Church &c. v. Realty Investment Co.*, 180 Ga. 35, 39-40 (178 SE 303) (1934).

*First Christian Church*, 180 Ga. at 39-41; *Wilson v. Smith*, 74 Ga. App. 251, 252 (39 SE2d 591) (1946).

Third, "the location of the way must not shift from place to place as to any part of the route, but the way must occupy the same ground all the while and be kept in repair on that ground." *Raines v. Petty*, 170 Ga. 53, 57 (1) (152 SE 44) (1930). Here, the location of the way in and out of the property was changed when Thompson built Lunsford Lane. And, at some point in time, Thompson has changed the location of portions of both Lunsford and Imperial Lanes by 30 or more feet. The record also reflects that Thompson altered Lunsford Lane once in the early 1990s, and McDougal admitted that Thompson altered Imperial Lane several times over the years. There is an issue of fact regarding this aspect of McDougal's case as well. See, e.g., *Jackson v. Stone*, 210 Ga. App. 465, 467-468 (2) (436 SE2d 673) (1993).

Factual questions such as these regarding whether a prescriptive easement has been established must be resolved by a jury. See *Hasty v. Wilson*, 223 Ga. 739, 743 (2) (a) (158 SE2d 915) (1967).

*Judgment reversed. Miller and Mikell, JJ., concur.*

DECIDED FEBRUARY 26, 2001.

*Michael H. Cummings II*, for appellants.
*English, Tunkle & Smith, Richard D. Tunkle*, for appellee.