## A04A1483. PICHULIK et al. v. BALL.

(607 SE2d 247)

PHIPPS, Judge.

The issues in this case are whether a certain easement agreement recorded in August 1983 created reciprocal easement rights in both the grantor and the grantee, whether the grantor's successors acquired a prescriptive easement, and whether the grantor's successors are entitled to injunctive relief.[1] The trial court determined that the easement agreement did not give the grantor property rights in the grantee's property and that the grantor's successors had not obtained a prescriptive easement, and denied injunctive relief to the grantor's successors. We affirm those rulings. The trial court also dismissed claims seeking monetary damages for trespass and nuisance, without hearing evidence regarding those claims. We reverse the dismissal of those claims.

In 1982 Highland Park Center Associates (Highland Park) owned realty on North Highland Avenue. This realty consisted of three separate parcels: (1) a residential lot at 479 N. Highland Avenue, approximately 50 feet wide and 100 feet deep, having a house and paved side driveway; (2) a paved parking area directly behind the 479

---

[1] Upon finding that its appellate jurisdiction was not invoked, the Supreme Court transferred this case to this court.

residential lot; and (3) a commercial parcel consisting of the North Highland Plaza and a parking lot adjacent to the Plaza. Before 1982, the residential lot at 479 and the rear paved parking area behind the residential lot comprised a single parcel. On August 15, 1983, Highland Park sold the residential lot at 479 N. Highland Avenue to Kwok Wai Tse. The same day Highland Park (as Grantor) and Tse (as Grantee) executed an "Easement Agreement" that states in part:

> WHEREAS, Grantor owns real property adjacent to and adjoining the said property of the Grantee which is located immediately South and East of the property of the Grantee, a full legal description of the property subject to this easement is shown on Exhibit "B" attached hereto and incorporated herein, by this reference, and

> WHEREAS, pursuant to Special Stipulation #14 of that certain real estate sales contract dated June 25, 1983 between the parties Grantor has agreed to grant, transfer and convey unto Grantee an easement for parking and ingress and egress to the rear portion of Grantee's property . . . it is agreed by and between the Grantor and the Grantee as follows:

> 1. *Grant of Easement.* Grantor, its agents, employees, successors and assigns hereby grant to the Grantee, its agents, employees, successors and assigns, a perpetual affirmative easement for parking and ingress and egress, without limitation, on and across the property of the Grantor described in Exhibit "B" hereof for use by the Grantee for vehicular and pedestrian traffic into and out of the aforesaid property of Grantee, during the use by the Grantee, its tenants, successors and invitees.

> 2. *Non-exclusive Use.* The use by both the Grantee and the Grantor shall be non-exclusive.

> 3. *Obstructions.* The Grantor and the Grantee agree not to obstruct, impede, or interfere, one with the other, in the reasonable use of this easement for the purpose of parking and ingress and egress to and from the respective properties.

After Highland Park and Tse executed the agreement, it was duly recorded.

From 1983 until 1993, Tse owned the 479 N. Highland residential lot and leased the residence to tenants. Tse's tenants parked in

the rear, the easement area. After Tse's ownership ended, the 479 N. Highland property had several different owners. In February 2002, the house on 479 N. Highland burned down, and on July 19, 2002, Stephen A. Ball purchased the residential property.

Meanwhile, in 1986, three years after selling the 479 residential property to Tse, Highland Park sold its other two parcels, i.e., the commercial property and the easement area at the rear of the 479 residential property to Rubin Pichulik, Louis Pichulik, and Ana Eda Pichulik Zucor, who continue to own the property now through a partnership.[2] In 2002, when Ball purchased the residential parcel at 479 N. Highland, the Pichuliks were renting the commercial property to four restaurants.

There are two curb cuts to the parties' property on North Highland Avenue, one at the commercial property and the other at the driveway at the 479 residential property. In 1995, several years before Ball acquired the 479 residential property, the Pichuliks paid $11,578 to a paving company to resurface and pave the main commercial parking lot, the driveway on 479, and the easement area behind the 479 property. The contractor also re-striped the parking slots. Painted on the pavement near the curb cut closer to the commercial property was a yellow ingress arrow, and an egress arrow was painted on the section of the paved driveway nearest the other curb cut at the 479 property. Louis Pichulik testified that "all the years we had the property . . . [people] followed those arrows." As Ball likewise acknowledged in his appellate brief, "[g]enerally, since 1983 any person going to 479 North Highland and/or the Commercial Lot would enter through the curb cut closest to the buildings on the Commercial Lot and exit on the curb cut closest to 479 North Highland." In other words, drivers entering or leaving either property would use the driveway at the commercial property for ingress and would use the driveway at the residential property for egress.

A few years before Ball's purchase of the 479 property, the Pichuliks' restaurant tenants had begun using a valet parking service to accommodate their customers. The valet service parked cars in the commercial parking lot and also in the easement area behind 479, parcels owned by the Pichuliks.

Shortly after Ball's purchase of the residential lot at 479, then consisting mainly of the burnt remnants of the house, Ball began to challenge the Pichuliks' use of the driveway on 479 and to dispute what Ball perceived as the Pichuliks' interference with his use and

---

[2] On August 16, 2002, Rubin Pichulik, Louis Pichulik, and Ana Eda Pichulik Zucor quitclaimed their individual interests to Rosebriar Court Apartments (Rosebriar), a Georgia general partnership comprised of Rubin Pichulik and his children, Louis Pichulik and Ana Eda Pichulik Zucor.

control over the easement area. To prevent the Pichuliks and their tenants from using the driveway on 479, Ball erected yellow caution tape, placed warning signs, and positioned debris including toilets, dirt, an abandoned trailer, and trash there. He also parked vehicles in a manner to obstruct access to the easement area.

As a result of Ball's actions, the Pichuliks filed suit against Ball, seeking injunctive and declaratory relief and damages for trespass, deprivation of a right of enjoyment, and nuisance. The Pichuliks claimed an interest over the driveway on 479 under two alternative theories: a "common driveway" for ingress and egress to their property or a prescriptive right to use the driveway. They also sought injunctive relief requiring Ball to remove the obstructions placed on the driveway at 479.

Contending that the Pichuliks had only permissive use of his property, Ball counterclaimed for damages. Ball asserted that he had "revoked the permissive use of his Property." Contrary to the Pichuliks' claim to rights to use his property for ingress, egress, and parking, Ball countered that they had no such rights and that they were interfering with his rights to the easement. Claiming that the Pichuliks were violating his rights, Ball sought damages for "the trespass of the Pichulik Parties across the southern border of [his] Property for ingress and/or egress through the parking lot."

The trial court conducted a hearing addressing the question of injunctive relief. In its order, the trial court noted that the Pichuliks were contending that their rights to use Ball's property for egress and ingress and parking fell into one of three categories: a reciprocal easement, a prescriptive easement, or a joint driveway. The court then systematically rejected each theory. First, the trial court analyzed the terms in the recorded easement. Noting that "the preamble portion of the Easement Agreement specifically indicates that Grantor (Plaintiffs' predecessor) was granting an Easement to Grantee (Defendant's predecessor)," the court concluded that the Pichuliks have "no rights to Defendant's property." The trial court found that "[t]he Easement Agreement does not specifically convey any rights to Grantor, either reciprocal or otherwise." The court concluded "that Plaintiffs do not have a reciprocal easement as to any of Defendant's property."

Second, the trial court held that the Pichuliks had failed to establish the elements of a prescriptive easement, finding their use of the driveway did not become adverse until 1999 and that Ball's predecessors had insufficient notice of an adverse claim prior to 1999. Third, the court decided that the driveway was not a joint or common driveway because such a finding applies only to cases in which the parties are in disagreement regarding the boundary line.

Having decided that the recorded easement afforded no rights in the 479 property to the Pichuliks and that no other theory of ownership applied, the trial court dismissed all of the Pichuliks' claims and dissolved the lis pendens filed against Ball's property. The trial court granted permanent injunctive relief to Ball and enjoined the Pichuliks and their tenants "from entering Defendant's property at 479 N. Highland and from interfering with Defendant's use of the Easement Area." The court directed that Ball's "claims for damages on his counterclaims" be set for trial. The Pichuliks appeal.[3]

1. The Pichuliks contend that the court erred by failing to find and declare a reciprocal easement in their favor over the driveway on Ball's property. They claim that the easement agreement is ambiguous and that the only interpretation that makes sense is that the parties agreed that both the grantor and grantee could use the driveway on the 479 residential property.

At issue is a question of law — whether the easement recorded in 1983 created reciprocal rights to the driveway on the 479 residential property enforceable by the successors of both the original grantee and grantor.[4] In reviewing a trial court's determination of legal issues, we consider such questions de novo and owe no deference to a trial court's legal analysis.[5]

"In interpreting an express easement, the rules of contract construction apply."[6] To resolve the legal questions arising from the easement agreement here requires use of the rules of contract construction.[7] "The cardinal rule of contract construction is to ascertain the intention of the parties. To this end the whole instrument, together with its circumstances, must be considered."[8] Absent ambiguity that cannot be resolved by applying the rules of contract construction, the contract remains a question of law.[9]

---

[3] Ball claims that the Pichuliks lack standing to appeal because the true owner of the property is Rosebriar. The Pichuliks transferred title to the rear portion of 479 N. Highland Avenue to Rosebriar in August 2002. Ball claims that the omission of Rosebriar from the notice of appeal is fatal to the Pichuliks' appeal. The record, however, shows that Ball agreed to stipulate to the inclusion of Rosebriar as a party plaintiff. Since Rosebriar was a party in the proceeding below, it is properly a party to this appeal. See *Sanders v. Ramo*, 203 Ga. App. 43 (1) (416 SE2d 333) (1992).

[4] See *Sofran Peachtree City, LLC v. Peachtree City Holdings, LLC*, 250 Ga. App. 46, 47 (550 SE2d 429) (2001).

[5] See *Tachdjian v. Phillips*, 256 Ga. App. 166, 168 (568 SE2d 64) (2002).

[6] *Irvin v. Laxmi, Inc.*, 266 Ga. 204, 205 (1) (467 SE2d 510) (1996).

[7] See generally *Duke v. KHD Deutz of America Corp.*, 221 Ga. App. 452, 453 (471 SE2d 537) (1996).

[8] (Citations, punctuation and footnotes omitted.) *Bradley v. Frank*, 264 Ga. App. 772, 773 (1) (592 SE2d 138) (2003).

[9] See *Sofran Peachtree City*, supra, 250 Ga. App. at 47.

Nothing in the easement agreement, including the legal description attached thereto, expressly provides reciprocal rights to the use of the driveway on the 479 property. The legal description of the easement pertains only to the paved parking area behind the 479 residential property, not to the driveway. Therefore, we find that the trial court correctly determined that the easement agreement does not afford the Pichuliks any rights to use the driveway on Ball's property.

2. The Pichuliks claim to have acquired a prescriptive easement to the driveway on the 479 residential lot. They contend that the trial court overlooked evidence that they had maintained and repaired the driveway and at one point even blocked it so that it could be paved. Whether a prescriptive easement has been established is a factual inquiry.[10] Prescriptive rights must be strictly construed, and the party asserting such rights must satisfy certain established criteria.[11] "Just as fee simple title to land can be acquired by prescription, so too can an easement."[12] To establish a prescriptive claim, a prescriber must show that the possession did not originate in fraud and that "it was public, continuous, exclusive, uninterrupted, peaceable and accompanied by a claim of right. OCGA § 44-5-161."[13] Permissive use may ripen into prescription but the prescriber must give notice that his use has become adverse.[14]

The trial court found that Ball's predecessors did not have notice of an adverse claim to the driveway on 479 before the valet parking system began in 1999. We agree. Even when viewed in the light most favorable to the Pichuliks, the evidence shows at most that before 1999, the Pichuliks enjoyed the shared use of the driveway on 479, not the exclusive or adverse use of it. In addition to Tse, two recent owners of 479 attested to the joint use of the driveway by their tenants, who parked next to the house on the driveway. Their testimony makes clear that the owners of 479 and the Pichuliks (or their tenants) were jointly using the driveway and that the Pichuliks did not have exclusive and uninterrupted possession, control and use of the driveway. In the absence of any evidence from which a jury could find that the Pichuliks gave notice before 1999 to the owners of 479 that the Pichuliks' use of the driveway had become adverse and exclusive, the

---

[10] See *Thompson v. McDougal*, 248 Ga. App. 270, 273 (546 SE2d 44) (2001).

[11] *Jackson v. Norfolk Southern R.*, 255 Ga. App. 695, 696 (1) (566 SE2d 415) (2002).

[12] *Chancey v. Ga. Power Co.*, 238 Ga. 397, 398 (1) (233 SE2d 365) (1977).

[13] *Childs v. Sammons*, 272 Ga. 737, 739 (2) (534 SE2d 409) (2000).

[14] See *First Christian Church &c. v. Realty Investment Co.*, 180 Ga. 35, 39-40 (178 SE 303) (1935).

Pichuliks cannot establish that their permissive use of the driveway had ripened into a prescriptive easement.[15]

3. The Pichuliks contend that the trial court erred by failing to permanently enjoin Ball from obstructing their easement and egress rights in the driveway area. As we determined above, nothing in the easement agreement expressly reserves a right to the grantor and its successors to use the driveway on the 479 residential lot. Nor do the Pichuliks have prescriptive rights to the driveway. Therefore, the Pichuliks do not have a right of ingress and egress by means of the driveway on Ball's property to the paved parking area behind 479 that the Pichuliks own, i.e., the easement area. It follows that the Pichuliks were not entitled to the injunctive relief that they sought.

4. The Pichuliks contend that the trial court erred in dismissing their claims for trespass to their property and nuisance, for which they sought monetary relief, without notice, a hearing, or the opportunity to present evidence. They point out that the hearing was limited to the question of injunctive relief.

In their lawsuit, the Pichuliks alleged that Ball had trespassed on their property, without their consent. They also sought damages under a nuisance theory, claiming that Ball had dumped trash and placed debris and building materials on their property. In addition, the Pichuliks alleged that Ball interfered with the businesses of their restaurant tenants.[16]

On appeal, they claim that they are entitled to damages for the nuisance Ball created from the time of its creation until it was abated by the court's temporary restraining order dated July 2, 2003, and for Ball's trespass onto their property to access the easement area during the time that Ball obstructed all access to the easement area, including his own.

In its order, the trial court dismissed all of the Pichuliks' claims, but did not specifically address or hear evidence on their damages claims for trespass to their property or nuisance. Those claims, insofar as they seek monetary relief, must be reinstated.

As a final matter, we find no merit to Ball's request for the imposition of sanctions against the Pichuliks under Court of Appeals Rule 15. Therefore, it is denied.

*Judgment affirmed in part and reversed in part. Smith, C. J., and Johnson, P. J., concur.*

---

[15] See *Thompson*, supra, 248 Ga. App. at 272-273.

[16] The owners of two of the restaurants testified that Ball had threatened to put them out of business.

DECIDED NOVEMBER 29, 2004.

*Gordon & Jones, Richard A. Gordon, Cammi R. Jones,* for appellants.

*Macey, Wilensky, Cohen, Wittner & Kessler, Louis G. McBryan,* for appellee.