## A00A1277. MacGIBBON v. AKINS.
### (538 SE2d 793)

Barnes, Judge.

Pete MacGibbon appeals the judgment on a jury verdict awarding plaintiff Mark Akins a prescriptive easement across MacGibbon's property along with $20,000 in damages. The jury also found MacGibbon had trespassed across Akins' property, but that Akins was not entitled to monetary damages due to the trespass. Finally, the jury found that MacGibbon's actions were wilful, in bad faith, or caused Akins unnecessary trouble and expense on both counts, but declined to award attorney fees.

MacGibbon argues that the trial court erred in denying his motion for a directed verdict and subsequent motion for judgment notwithstanding the verdict because: (1) no evidence showed Akins or his predecessors in title gave notice of adverse use by performing repairs on the dirt road across his property; (2) Akins failed to prove that his claimed easement did not exceed 20 feet in width; (3) the trial court erred in allowing Akins to call a rebuttal witness who testified that MacGibbon's reputation in his workplace community was not good; and (4) the judgment did not conform to the verdict. For the reasons that follow, we affirm the trial court.

1.

The motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, judgment n.o.v. should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this approach governs the actions of appellate courts as well as trial courts.

(Citation and punctuation omitted.) *Denson v. City of Atlanta*, 202 Ga. App. 325, 326 (1) (414 SE2d 312) (1991). "A directed verdict (and judgment n.o.v.) is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, *demands* a certain verdict." (Citation and punctuation omitted; emphasis in original.) *MARTA v. Mehretab*, 224 Ga. App. 263, 266 (2) (480 SE2d 310) (1997).

2. OCGA § 44-9-1 provides that "[t]he right of private way over another's land may arise from . . . prescription by seven years' uninterrupted use through improved lands or by 20 years' use through wild lands."

Use alone is insufficient to acquire prescriptive title under

OCGA § 44-9-1. An owner's acquiescence in the mere use of his road establishes, at most, a revocable license. To establish a prescriptive easement over the private property of another pursuant to OCGA § 44-9-1, it is necessary to show that the owner was given notice that the user intended to appropriate it as his own.

(Citations and punctuation omitted.) *Eileen B. White & Assoc. v. Gunnells,* 263 Ga. 360, 362 (434 SE2d 477) (1993). Making repairs to the road constitutes notice to the landowner that the repairer intends to appropriate the road as his own. Id. at 360-361; *Rothberg v. Peachtree Investments,* 220 Ga. 776, 780 (2) (142 SE2d 264) (1965).

To reverse the trial court's judgment on the jury verdict, we must find no evidence that Akins or his predecessors put MacGibbon or his predecessors on notice of their intent to assert a prescriptive easement over MacGibbon's property.

Akins owns 63 acres of unimproved land abutting a federal wildlife preserve and the Amicalola River on one side and MacGibbon's property on the other. A dirt road ran from a public street through the property of several different owners before crossing MacGibbon's property, then ended at Akins' property, continuing to the river as a trail. Akins' predecessors in title were Opal Hansard, who bought the property in 1971, then her husband Robert Hansard, who sold the land to Akins in 1991.

As a condition of sale, Hansard strung a cable across the road or trail at the edge of Akins' property, abutting MacGibbon's property. Akins explained that, while he expressly allowed people to walk across his land to get to the river, he did not want anyone driving through there, eroding the trail and polluting the environment. Akins testified that he first saw MacGibbon riding through his land on a four-wheel-drive recreation vehicle in early 1995. Later that year, Akins described a confrontation in which MacGibbon said, "Get off my land. You came across my land. If you ever come across my land again, I will do to you the worst thing you can imagine I could ever do." In April 1996, Akins discovered that MacGibbon had erected a gate across the road, 20 feet east of Akins' cable and property line. MacGibbon said he would remove the gate if Akins removed the cable, and Akins again extended permission for MacGibbon to walk across the property rather than drive. Akins testified that he heard shots fired in his direction during several visits; on one occasion, he saw MacGibbon run into Akins' woods and emerge holding an ax. Akins subsequently revoked MacGibbon's permission to walk across the land and testified that he was frightened of MacGibbon and rarely visited his property any more. After Akins filed suit, MacGibbon opened the gate.

MacGibbon argues that Akins presented no evidence that MacGibbon had notice of a prescriptive easement by repairs done to the road by Akins or his predecessors in title. However, Akins did present some evidence to support his claim of a prescriptive easement of which MacGibbon had notice. When Robert Hansard sold the property to Akins in 1991, he signed an affidavit in support of title in which he averred that he had "repaired the right-of-way when necessary" since his wife bought the property in 1971. Opal Hansard testified that her husband had repaired the road on MacGibbon's property when necessary, using his power saw to remove downed trees, for example. Akins testified that he put ten tons of gravel on either side of the cable at his property line because MacGibbon would not allow him to build a drainage culvert. He also testified that he paid a neighbor $100 for MacGibbon's use of a tractor on MacGibbon's portion of the road.

The trial court properly submitted the prescriptive easement issue to the jury, which resolved it against MacGibbon. "The jury is the final arbiter of the facts, and the verdict must be construed by the trial and appellate courts in the light most favorable to upholding the jury verdict." *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 159 (1) (c) (256 SE2d 916) (1979). As some evidence supported the jury verdict, and all of the evidence did not demand a verdict for MacGibbon, the trial court did not err in denying the motion for directed verdict or motion for judgment n.o.v. Id.

3. MacGibbon argues that the trial court erred in denying his motions for directed verdict and judgment n.o.v. because Akins failed to prove that the easement he sought did not exceed 20 feet and was the same 20-foot-wide area originally claimed.

"An applicant cannot establish any right whatsoever in a private way if the width of the pathway exceeds the statutory [20-foot] limit at any point when originally claimed by the applicant." *Rizer v. Harris*, 182 Ga. App. 31, 34 (3) (354 SE2d 660) (1987), overruled on other grounds, *Eileen B. White & Assoc. v. Gunnells*, supra, 263 Ga. at 362. However, the presentation of conflicting evidence at trial regarding the width of the easement creates a factual issue for the jury to resolve. See *Norfolk Southern R. Co. v. Dempsey*, 267 Ga. 241, 243 (2) (476 SE2d 577) (1996).

Akins originally sued for a 30-foot-wide easement, and the description at the top of Robert Hansard's affidavit in support of his deed of sale to Akins describes a 30-foot-wide easement, as does the warranty deed. Akins then amended his complaint to seek a 20-foot-wide easement. Evidence presented at trial included scaled plats showing a roadway 15 feet wide, 20 feet wide, and testimony that the road was between 12 and 17 feet wide. The trial court did not err in denying MacGibbon's motions for directed verdict and judgment

n.o.v. on this ground.

4. MacGibbon argues that the trial court erred in allowing Akins to present rebuttal testimony regarding MacGibbon's bad reputation. While OCGA § 24-2-2 provides that evidence of the parties' general character is generally irrelevant, OCGA § 24-9-84 provides that "[a] witness may be impeached by evidence as to his general bad character." The statute further provides that, "The impeaching witness should first be questioned as to his knowledge of the general character of the witness, next as to what that character is, and lastly he may be asked if from that character he would believe him on his oath."

The impeaching witness in this trial was asked if he knew MacGibbon's reputation around the General Motors plant and community, what that general character was, and whether he would believe him under oath. While MacGibbon admits that a work environment can constitute a community for purposes of impeachment testimony (*Bennett v. George*, 105 Ga. App. 527, 533-534 (12) (125 SE2d 122) (1962)), he argues that the trial court abused its discretion in allowing this testimony because the witness had stopped working at the plant ten years before the trial took place. He further argues that the scope of the questions and answers went beyond that allowed by the statute, such as the witness's testimony that MacGibbon was known around the plant as "Lying Pete."

We have held that a workplace association "must be long enough both as to the witness' relationship with the defendant in his community to lend the value judgment credence." *Bush v. State*, 149 Ga. App. 448, 449 (4) (254 SE2d 453) (1979). The witness in this case testified that he had worked at the plant for 42 years and had kept in touch with the General Motors community since he retired by continuing to attend union meetings. We conclude that the trial court did not abuse its discretion in allowing the rebuttal witness to testify regarding MacGibbon's reputation at work.

5. Finally, MacGibbon argues that the judgment materially differs from the verdict, because the judgment includes language indicating that the easement was "perpetual and non-exclusive." However, the record shows that MacGibbon did not object to the judgment when the trial court presented it to counsel for comment, but waited until the hearing on his motion for new trial or judgment n.o.v. "One cannot complain of a judgment, order, or ruling that his own procedure or conduct aided in causing." *Rush v. Southern Property Mgmt.*, 121 Ga. App. 360, 361 (2) (a) (173 SE2d 744) (1970).

*Judgment affirmed. Blackburn, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 30, 2000 —
RECONSIDERATION DENIED SEPTEMBER 13, 2000.

*Roger F. Huff*, for appellant.
*Stewart, Melvin & Frost, Frank Armstrong III*, for appellee.