A01A0320. TRAMMELL et al. v. WHETSTONE et al.
A01A0321. ELLIOTT et al. v. WHETSTONE et al.
(552 SE2d 485)

POPE, Presiding Judge.

This appeal follows a single, consolidated jury trial of two separate actions seeking to determine the rights among the various parties to use two roadways in Fannin County. These roadways cross the property of D. Lamar and Patrycia J. Elliott and the property of Carl Trammell and Marieda McDonald Trammell. The actions were filed by neighboring landowners, John H. and Luva H. Whetstone and by William R. and Connie M. Reynolds. Both suits named Carl Trammell as defendant and each sought to enjoin him from blocking the plaintiffs' use of a roadway designated as W. R. McDonald Drive. The Elliotts, who own the property between the Trammell property and the Whetstone and Reynolds properties, were subsequently allowed to intervene in both lawsuits as party defendants. They sought a determination as to whether the Reynoldses and the Whetstones had any rights to use roadways that cross their property and connect with W. R. McDonald Drive.

The jury returned a verdict granting the Reynoldses and the Whetstones permanent easements over both the Elliott and the Trammell properties. The Elliotts and the Trammells filed these related appeals from the denial of their motions for judgment notwithstanding the verdict and for new trial.

Our review of the trial court's denial of these motions is circumscribed by the "any evidence" standard. *Dill v. Chastain*, 234 Ga. App. 770, 771 (507 SE2d 872) (1998). Thus, we must resolve any ambiguities in the evidence in favor of the verdict:

> In determining whether the trial court erred by denying defendant's motion for a directed verdict and motion for judgment n.o.v., this court must view and resolve the evidence and any doubt or ambiguity in favor of the verdict. A directed verdict and judgment n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.

(Citations and punctuation omitted.) *Dept. of Transp. v. Dalton Paving &c.*, 227 Ga. App. 207, 213 (489 SE2d 329) (1997).

Viewed in that light, the evidence at trial showed that most of the land at issue was originally part of one large farm owned by J. T. Harris. The Harris family constructed a roadway as early as 1927 to provide access from their home to other roads, and later to Georgia Highway 60. Over the years, the Harris farm was subdivided and

sold to various purchasers. The Trammells acquired approximately three acres in the vicinity of the Harris property from Marieda's father, W. R. McDonald, in two separate transactions — the first in March 1971 and the second in February 1986. The Trammell property is located between the old Harris home and Highway 60, and a portion of the old Harris roadway, which the Trammells named W. R. McDonald Drive, crosses the property and connects with the highway.

The Whetstones acquired the adjacent tract in October 1971. The Harris family homeplace was located on this property, and the only access from the house to Highway 60 was across the Trammell property by way of W. R. McDonald Drive. The warranty deeds signed in connection with the Whetstones' acquisition, however, reflect no easement over the Trammell property. Over the years, the Whetstones rented their property to various tenants. The Elliotts were their tenants from 1975 through 1977, and in October 1977, they purchased 30 acres of the property from the Whetstones.

The Elliott property is situated between the Whetstone and the Trammell tracts and includes the old Harris house. In addition, the property contains the portion of the old Harris roadway running from the house to the Trammell property. Although the sale to the Elliotts left the Whetstones with no direct access to their property from Highway 60, they reserved no formal easement over the Elliott property when they conveyed it.

In November 1982, the Whetstones conveyed approximately ten acres of their remaining property to John Whetstone's brother and sister-in-law, Ira and Marlene Whetstone. John and Luva retained ownership of the land lying between this property and the Elliott property. In 1983, Ira and Marlene began building a home on their property. For the construction, they accessed their property by way of another neighbor's land after first obtaining his permission to do so. In 1984, however, the four Whetstones constructed a road from their respective properties leading across the Elliott property and connecting with W. R. McDonald Drive. They christened this road Whetstone Way.

John Whetstone testified that they built this road after he wrote the Elliotts requesting an easement, which he contends the Elliotts granted in a reply letter. But no such correspondence was introduced at trial. And the Elliotts testified that the request was only for temporary permission to cross their property during the construction of Whetstone's home. They deny ever granting John and Luva Whetstone a permanent easement, and they further deny ever being asked for or ever granting permission for Ira and Marlene Whetstone to use their property at all. When Whetstone Way was constructed, the

Elliotts lived away from Fannin County and seldom visited their property. They contend that the road was built without their knowledge or consent and that they first saw the road in 1989. They testified that they did not discover how much of the road ran across their property until later.

Despite the lack of a formal easement or license, the Whetstones, their predecessors in title, their tenants, and others utilized W. R. McDonald Drive, and later Whetstone Way, to access their respective properties from Highway 60. Beginning July 13, 1994, Carl Trammell posted signs stating that W. R. McDonald Drive was a private road. Nine days later, on July 22, 1994, Ira and Marlene sold their property to the Reynoldses.[1] The Reynoldses saw one of Trammell's signs on the day they closed on their purchase. On or around August 8, 1994, Trammell erected a sign stating that the road would be closed after 60 days.

On December 9, 1994, Trammell sent written notice to the Whetstones and the Reynoldses that he would gate W. R. McDonald Drive in 30 days. When he did so in January 1995, this litigation ensued.

### Case No. A01A0320

1. In his appeal, Trammell contends the trial court erred in denying his motions for directed verdict, j.n.o.v. and new trial because the Whetstones and the Reynoldses failed to prove a prescriptive easement over his property. He asserts that they failed to show seven years uninterrupted use of W. R. McDonald Drive (1) that was adverse to Trammell's interest, (2) that was not pursuant to a license and (3) that was not under the belief that W. R. McDonald Drive was a public road.

In order to establish a right-of-way over the land of another, a plaintiff must show his "uninterrupted use of the [road]way for seven or more years, the way was not over twenty feet wide, and that he has kept the way open and in repair for at least seven years." (Citation omitted.) *Simmons v. Bearden*, 234 Ga. App. 81, 82 (506 SE2d 220) (1998). See OCGA §§ 44-9-1; 44-9-54. Here, the Whetstones, the Reynoldses and their predecessors in title had used the portion of W. R. McDonald Drive that crosses Trammell's property for more than seven years. But Trammell contends that this usage was with his permission and thus pursuant to a revocable license.

Trammell is correct that merely using a roadway is not enough

---

[1] Therefore, at the time of trial, a person traveling from Highway 60 and using the roadways at issue would first cross the Trammell property, then the Elliott property, then the Whetstone property, and end on the Reynolds property.

to acquire prescriptive rights. *Simmons*, 234 Ga. App. at 82. "That a property owner knows of and acquiesces in the use of his private way is insufficient to establish prescription." (Citation omitted.) *Douglas v. Knox*, 232 Ga. App. 551, 553 (2) (502 SE2d 490) (1998). "An owner's acquiescence in the mere use of his road establishes, at most, a revocable license." *Eileen B. White & Assoc. v. Gunnells*, 263 Ga. 360, 362 (434 SE2d 477) (1993). But the permissive use of a road may become adverse where notice is given to the owner of the property that the user intends to make the road his own. Id.; *Douglas*, 232 Ga. App. at 552 (2). Making repairs to the roadway provides that notice. *MacGibbon v. Akins*, 245 Ga. App. 871, 872 (2) (538 SE2d 793) (2000).

The evidence at trial showed that John and Ira Whetstone did make repairs to W. R. McDonald Drive beginning in 1984 in connection with the construction of Whetstone Way. In 1984, the Whetstones employed workers to repair any damage to W. R. McDonald Drive caused during the construction. And John Whetstone testified that he and his brother repaired and maintained the roadways about every three to four months from the period 1985 to 1992. This testimony was corroborated, in part, by one of the Elliotts' tenants who stated that she saw the Whetstones maintaining the road during the period 1987 to 1989. The Elliotts' caretaker also testified that she saw the brothers working on the roads during 1989 to 1992.

Whetstone testified that Trammell was aware of at least some of these repairs, but raised no objection until 1992, when he told them "very politely and very sternly" not to do any more work on the road. Although Whetstone said that he believed at the time that the road was county-owned, the brothers ceased their work for a period of time. But in July 1994, Ira Whetstone again put a load of gravel on the road. Therefore, there was sufficient evidence for the jury to determine that after they built their homes, the Whetstones began to assert control over the old Harris driveway, including W. R. McDonald Drive, as an extension of their own driveway, Whetstone Way. The evidence also supported a finding that this control had extended through repairs and maintenance for a period of seven years or more.[2] And while the Whetstones stopped making their repairs for a time, it was up to the jury to determine whether this lull constituted an abandonment of their prescriptive rights. *Central of Ga. R. Co. v. DEC Assoc.*, 231 Ga. App. 787, 790 (1) (a) (501 SE2d 6) (1998).

Trammell contends, however, that John Whetstone's belief that W. R. McDonald Drive was a county road is at odds with his claim to prescriptive title over Trammell's land. But the real issue is whether

---

[2] As discussed more thoroughly in Division 2, the Reynoldses were successors in interest to Ira and Marlene Whetstone, and thus, the Whetstones' prior prescriptive rights were passed on to the Reynoldses. OCGA § 44-5-172.

the Whetstones' repairs put Trammell on notice that they intended to own the roadway. We have found that there was sufficient evidence to support the jury's findings in that regard. The Whetstones' actions were clearly adverse to Trammell's ownership of the road, and the fact that the Whetstones may have believed they had the right to use the road because it was a county road is immaterial. See *Keng v. Franklin*, 267 Ga. 472, 473 (480 SE2d 25) (1997).

This evidence along with John Whetstone's testimony that the average width of the roadways in question was between 12 and 15 feet — well below the 20-foot limit — was sufficient to support the jury's finding that the Whetstones and the Reynoldses had established a private right-of-way across Trammell's land. *MacGibbon*, 245 Ga. App. at 873 (3); *Simmons*, 234 Ga. App. at 82.

### Case No. A01A0321

2. (a) The Elliotts also assert that the Reynoldses and the Whetstones failed to prove a prescriptive easement across their property. But just as we held in Division 1, we find that there was sufficient evidence to support the jury's determination that the Whetstones and the Reynoldses also established a private right-of-way across the Elliott property.

The Elliotts contend that because the Whetstone brothers' use of their land was originally permissive, they were entitled to *actual* notice of the Whetstones' adverse use before any prescriptive period could run. See, e.g., *Norfolk Southern R. Co. v. Dempsey*, 267 Ga. 241 (1) (476 SE2d 577) (1996); *Douglas*, 232 Ga. App. at 552. They assert that they had no actual notice of the road before 1989 and did not realize that so much of the road traversed their property until after the lawsuit began in 1995. They argue, therefore, that the prescriptive period could not have begun to run until 1995.

The Elliotts testified, however, that they only granted John and Luva Whetstone temporary permission to cross their property during the construction of their home and never authorized the creation of a permanent roadway. In fact, they believed that the Whetstones would be running their driveway off the other end of their property. Further, the Elliotts stated they never granted Ira and Marlene Whetstone permission to use their property at all. Based upon this testimony, the jury could have found that the Whetstones had no permission to use the Elliott property after the house construction was completed. Thus, the jury could have concluded that the Whetstones' building of a permanent driveway was not a permissive use and that Ira and Marlene Whetstone never had permission to cross the Elliott property at all. Accordingly, constructive notice would have been enough to start the prescriptive period running. See *Keng*, 267 Ga. at

472. "Prescriptive rights are to be strictly construed, and the prescriber must give some notice, actual *or constructive*, to the landowner he or she intends to prescribe against." (Emphasis supplied.) Id.

In 1984, the Whetstones built a permanent roadbed connecting their homes with the old Harris driveway on the Elliott property. They named the road Whetstone Way and continued to maintain both Whetstone Way and W. R. McDonald Drive over the years. This maintenance was observed by at least one of the Elliotts' tenants beginning in 1987 and later by their caretaker. The Elliotts also admitted that, although they lived out of state for ten years, they had been in Fannin County an average of three to four times per year during that time and occasionally visited their property. They even drove down Whetstone Way when they visited John and Luva Whetstone in 1989. Based upon this evidence, the jury could have found that the Elliotts had at least constructive notice of the Whetstones' prescriptive intent.

(b) The Elliotts also contend that the trial court erred in charging the jury on the issue of tacking. "An inchoate prescriptive title may be transferred by a person in possession to his successor so that successive possessions may be tacked to make out the prescription." OCGA § 44-5-172. Accordingly, "[s]uccessive users may tack prescriptive title." *Douglas*, 232 Ga. App. at 552. The only requirements are that the successive users have privity of title and that the use by the predecessor in title must have been adverse and must have met all the requirements for establishing a prescriptive easement:

> The burden is upon [claimants] to show by a preponderance of the evidence that this prior possession was of such character as to be the foundation of prescription, and be adverse. The foundation must meet all the requirements of OCGA § 44-5-164, and among these requirements, the possession must be accompanied by a claim of right. "While this does not mean that the possession must be accompanied by a claim of title out of some predecessor, it does mean that there must be some claim of title in the sense that the possessor claims the property as his own."

(Citation and punctuation omitted.) *Wisenbaker v. Warren*, 196 Ga. App. 551, 553 (3) (396 SE2d 528) (1990). See also *Swicord v. Hester*, 240 Ga. 484, 485 (2) (241 SE2d 242) (1978).

Here, there is no question that the Reynoldses and Ira and Marlene Whetstone share privity of title. And as discussed above, the evidence supported a finding that the Whetstones' use of the Elliott property met the requirements of a prescriptive easement. Accord-

ingly, it was not error for the trial court to instruct the jury on tacking pursuant to OCGA § 44-5-172.

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED JULY 10, 2001.

*Weaver & Weaver, George W. Weaver, Jeffrey L. Floyd*, for appellants (case no. A01A0320).

*David E. Ralston*, for appellants (case no. A01A0321).

*Little & Drost, Bryan C. Drost, Doss & Doss, Sherri Dillard-Doss, Oliver H. Doss, Jr., Robert K. Ballew*, for appellees.