## A10A2168. YAWN v. NORFOLK SOUTHERN RAILWAY COMPANY.

(706 SE2d 197)

MIKELL, Judge.

After Norfolk Southern Railway Company (the "Railway") closed a railroad crossing leading to Gary E. Yawn's property on September 6, 2007, Yawn filed the underlying action, claiming interference by the Railway with his easement right to a private railroad crossing. Yawn sought to compel the Railway to restore the crossing it had removed; he also sought damages for the Railway's interference with his use of the private way. The parties filed cross-motions for summary judgment, and following a hearing, the trial court granted summary judgment in favor of the Railway and against Yawn. Yawn appeals.[1] We find no error and affirm.

> On appeal from a grant of summary judgment, this court conducts a de novo review of the evidence viewed in the light most favorable to the nonmovant, to determine whether any question of material fact exists. Summary judgment is appropriate where the moving party can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.[2]

So viewed, the evidence shows that Yawn owns a 155-acre tract of timberland in Dodge County, and that until September 6, 2007, the private crossing at issue here went over the Railway's main line, which ran adjacent to Yawn's property. The private crossing, originally built by the Railway in the 1800s, provided access to Yawn's property from the highway on the other side of the Railway's main line. Yawn's grandfather purchased the land in 1915, and Yawn acquired it after his mother's death in 1990. Yawn testified by

---

[1] Yawn appealed to the Supreme Court of Georgia, which transferred the case to this Court for disposition.

[2] (Footnote omitted.) *Norton v. Holcomb*, 285 Ga. App. 78 (646 SE2d 94) (2007) (whole court).

deposition that during all that time the private crossing had been used by the owners of the property to gain access to the land. Yawn presented evidence that the crossing had been used to haul out timber upon a sale of timber in 2006. Prior to that, it was used to haul out timber in 1988 or 1989. Yawn testified that the crossing was also used to gain access to the land for hunting by Yawn himself, by his nephews and by the neighbor who owned the adjoining land.

Roy M. Harper, an employee of the Railway, testified by affidavit that in his capacity as the Railway's track supervisor, he inspected the private crossing at issue here and saw no evidence of recent use. He also determined that Yawn had at least three other points of access to his property. After it was determined that no record existed of a private crossing agreement or easement agreement concerning this crossing, Harper had a sign posted at the crossing on June 27, 2007, advising that the crossing would be removed on September 6, 2007. The crossing was removed on September 6, 2007.

W. L. Barringer, employed by the Railway as its Director-Grade Crossing Safety, testified by affidavit that the purpose of closing this crossing, as for other grade crossings closed by the Railway, was "to enhance public safety for both vehicle and train traffic at grade crossings." Barringer further averred that the Railway's standard procedure for closing a private crossing was followed in this case. First, it was determined that no private crossing agreement as to the crossing was in effect; that the crossing did not appear to be in use; and that the owner of the land adjoining the crossing had alternative access from his land to public roadways. Then, a notice was posted announcing the Railway's intent to close the crossing in 60 days, with a telephone number for a user of the crossing to call.

The Railway received no objection to the removal of the crossing until Yawn first telephoned the Railway office in Atlanta on November 5, 2007. Yawn acknowledged that he did not notice that the crossing had been removed until he visited the property on that date.

1. Yawn contends that an easement for the private crossing was created in a deed from his mother to the Dodge County-Eastman Authority (the "Authority") in 1988. This argument is without merit.

The record reflects that on June 10, 1988, Yawn's mother, the then-owner of the property, conveyed an adjacent 2.521-acre tract to the Authority. This tract was adjacent to the Railway's main line right of way, and thus the conveyance did not include the private crossing at issue here. On November 5, 1993, the Authority transferred to the Railway an easement over this 2.521-acre tract. Both conveyances were in contemplation of a spur line from the main line to serve the Gilman Paper Company's plant (the "Gilman plant").

The deed from Yawn's mother to the Authority (the "1988

Deed") contained the following language: "The Party of the First Part [that is, Yawn's mother], for her heirs, successors and assigns, reserves the right to use the existing private crossing as shown on said drawing." The drawing referred to, recorded at Dodge County records in Plat Book 21, Page 45, was referenced in both deeds, although the language quoted above did not appear in the deed from the Authority to the Railway. On the drawing, the crossing at issue here was marked "Existing Private Crossing"; however, as noted above, the crossing was not actually a part of the property under conveyance by either of the above deeds.

The Railway (or its predecessors-in-interest) has held a right-of-way for its main line from at least 1888. Our Supreme Court has ruled that "a railroad right-of-way is more than the mere right of passage; . . . it is more than an easement; . . . it is, in substance, an interest in land special and exclusive in its nature."[3] Yawn acknowledged in his deposition, and he has pointed to no contrary evidence in the record, that he does not have any easement agreement or deed from the Railway or its predecessors conveying an easement for the private crossing at issue here. Moreover, neither the language in the 1988 Deed nor the drawing attached thereto was effective to create an express easement for a private crossing where (1) the purported easement was over property not conveyed in the 1988 Deed; and (2) at the time of the conveyance, Yawn's mother did not have any ownership interest in the Railway's right-of-way where the private crossing was located.[4]

2. Yawn contends that he and his predecessors-in-title obtained a prescriptive easement to the private crossing at issue here. We disagree.

"Prescriptive rights are to be strictly construed, and the prescriber must give some notice, actual or constructive, to the landowner he . . . intends to prescribe against."[5] OCGA § 44-9-54 provides that a private way, that is, "a right of ingress and egress over

---

[3] (Citation and punctuation omitted.) *Tompkins v. Atlantic Coast Line R. Co.*, 213 Ga. 48, 50 (96 SE2d 603) (1957).

[4] See *Macon-Bibb County Indus. Auth. v. Central of Ga. R. Co.*, 266 Ga. 281, 283 (3) (466 SE2d 855) (1996) (no express easement created as to rail lines shown in recorded plat, where rail lines lay on adjoining property not owned or operated by grantor). See also *Seignious v. MARTA*, 252 Ga. 69, 70-71, 72 (1) (311 SE2d 808) (1984) (evidence showed that grantor had no ownership claim to tract adjoining the tract transferred in the deed; therefore, grantor's reservation in deed was ineffective to reserve any interest in that adjoining tract). It is a long-standing legal maxim that no one can transfer more right to another than he has himself (nemo plus juris ad alium transferre potest quam ipse habet). Black's Law Dictionary, p. 1038 (6th ed. 1990). In this case, no one can reserve to himself more right than he has himself.

[5] (Citation omitted.) *Keng v. Franklin*, 267 Ga. 472 (480 SE2d 25) (1997). Accord *Norton*, supra at 81 (2). See OCGA §§ 44-9-1, 44-9-54.

the land of another,"[6] may be established by prescription in the following manner: "Whenever a private way has been in constant and uninterrupted use for seven or more years and no legal steps have been taken to abolish it, it shall not be lawful for anyone to interfere with that private way."[7] In order to establish a private way by prescription, the petitioner must also show "that the private way did not exceed 20 feet in width, [that] the use continued along the same route without shifting from one path to another, and that the prescriber kept the way open and in repair during the period of prescription."[8] "If the prescriber fails to show any of these elements necessary to establish prescriptive title, he cannot recover."[9] Moreover, "[w]hen the use of a private way originates by permission of the owner, prescription does not begin to run until the user notifies the owner, by repairs or otherwise, that he has changed his position from that of a mere licensee to that of a prescriber."[10] It is the element of notice that is lacking in the case before us.

In his deposition, Yawn acknowledged that no written agreement or easement from the Railway existed concerning this private crossing. He admitted that his use of the private crossing had been with the permission of the Railway, although he also claimed an easement right to the crossing. It is undisputed that the crossing had been repaired and maintained throughout by the Railway. Yawn asserts, however, that the language in the 1988 Deed, as well as in a letter he wrote to the Railway in October 1987 (the "1987 letter"), were sufficient to place the Railway on notice of the Yawns' adverse claim to the private crossing and to initiate the running of the prescriptive period. However, the language in both documents indicates merely that the Yawns desired to continue the current permissive use of the private crossing, not that the Yawns intended to assert a prescriptive right to use the crossing.

We disagree with Yawn's contention that the Railway was put on notice of an adverse claim by his 1987 letter. The record reflects that during the negotiations for the spur track to the Gilman plant, the Railway partially removed the crossing at issue here. In his 1987 letter to the Railway, Yawn objected to the removal of the crossing, stating that "[t]his letter is to serve as notice that we have had the

---

[6] *Keng*, supra.

[7] OCGA § 44-9-54. See also OCGA § 44-9-1; *Keng*, supra.

[8] (Citation omitted.) *Keng*, supra. Accord *Norton*, supra.

[9] (Citation and punctuation omitted.) *Eileen B. White & Assocs. v. Gunnells*, 263 Ga. 360 (434 SE2d 477) (1993).

[10] (Citation and punctuation omitted.) *Keng*, supra at 472-473. Accord *Eileen B. White*, supra at 362 ("the notice required is notice of the assertion of an adverse use, under claim of right, as distinguished from a mere permissive use") (citation omitted); *Duncan v. Sluder*, 204 Ga. 458, 460 (1) (50 SE2d 78) (1948).

use of this crossing for many years (in excess of 75 years) and do not want it eliminated." The Railway subsequently restored the crossing, and the Yawns continued to use it. As this Court noted in a similar case,[11] "[i]f [Yawn's] complaint amounted to notice of an adverse claim, the adversity was very short-lived."[12] The fact that the Railway restored the crossing so that the Yawns could continue to use it "is evidence that the [Railway] *permitted* rather than *forbade* continued use of the [crossing]."[13]

"That a property owner knows of and acquiesces in the use of his private way is insufficient to establish prescription."[14] "An owner's acquiescence in the mere use of his road establishes, at most, a revocable license."[15] The Yawns' mere use of the private crossing was not enough for them to acquire prescriptive rights.

Because Yawn failed to show that the Railway was on notice of an adverse claim to the private crossing, the trial court did not err in granting summary judgment to the Railway.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 15, 2011.

*Straughan & Straughan, Mark W. Straughan,* for appellant.
*Hall, Bloch, Garland & Meyer, Benjamin M. Garland,* for appellee.

---

[11] *Douglas v. Knox,* 232 Ga. App. 551, 552-553 (2) (502 SE2d 490) (1998) (fact that property owner removed gate across hunt trail at petitioner's request showed that petitioner's use of trail was permissive).

[12] Id. at 552 (2).

[13] (Emphasis supplied.) Id. at 553 (2). Cf. *Thompson v. McDougal,* 248 Ga. App. 270, 271-272 (546 SE2d 44) (2001) (that petitioner's use of private way was permissive could be implied from owner's grading of private road).

[14] (Citation omitted.) *Douglas,* supra.

[15] (Punctuation omitted.) *Jackson v. Norfolk Southern R.,* 255 Ga. App. 695, 697-698 (2) (566 SE2d 415) (2002), citing *Eileen B. White,* supra.