**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 12, 2013**

# In the Court of Appeals of Georgia

A13A0419. GEORGIA DEPARTMENT OF TRANSPORTATION
v. JACKSON.

RAY, Judge.

Appellee Clyde W. Jackson filed this inverse condemnation case against the Georgia Department of Transportation ("DOT"), contending that the DOT took a property interest from him, without compensation, when the DOT closed a driveway that led to his property as part of its work on Highway 113 in Bartow County. The driveway led from Highway 113 across a tract of land with no record ownership and over a railroad crossing before reaching Jackson's property. Jackson argued that he had acquired a prescriptive easement over the driveway, including the railroad crossing, and thus had a property interest for which that DOT failed to compensate him. The DOT contends that Jackson failed to provide notice to the railroad of his

adverse use of the railroad crossing, and thus, he had only a revocable license in the railroad crossing, which is not a compensable property interest. The case proceeded to trial, and the jury found that Jackson had obtained a prescriptive easement over the entire driveway, including the railroad crossing, and awarded him compensatory damages. The trial court denied DOT's motion for directed verdict made at the close of evidence and its motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. The DOT appeals from that order. Finding no error, we affirm.

On appeal, our review of the trial court's denial of these motions is "circumscribed by the 'any evidence' standard." (Citation omitted.) *Trammell v. Whetstone*, 250 Ga. App. 503 (552 SE2d 485) (2001). Further,

> In determining whether the trial court erred by denying defendant's motion for a directed verdict and motion for judgment n.o.v., this [C]ourt must view and resolve the evidence and any doubt or ambiguity in favor of the verdict. A directed verdict and judgment n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.

(Citation omitted.) Id.

2

Viewed in this light, the pertinent evidence at trial shows that Jackson filed the present inverse condemnation case after the DOT eliminated a driveway serving his property in Bartow County during highway improvements in 2007. The driveway led from Highway 113 to Jackson's property, crossing over a tract of land without record ownership and over a railroad crossing owned by CSX Railroads ("CSX"). Jackson testified that he was 76 years old, that he and his family had used and maintained the driveway all his life, and until recently, the driveway had been the only means of ingress and egress to his property. Jackson provided evidence that the driveway was less than twenty feet wide, that its location had never changed, and that he and his family had kept the driveway open and in repair by mowing, grading, and graveling it.

Aerial photographs were introduced into evidence showing that the driveway and the railroad crossing have existed in that place for at least 30 years. When CSX upgraded and expanded its existing tracks to serve an electric power plant constructed in the 1970s, CSX paid Jackson to move his fence and as part of the transaction; CSX destroyed and then restored the section of the driveway that crosses the railroad.

On February 1, 1985, Jackson and his father leased a portion of the property to Buckeye Gas Products, a propane gas company. Buckeye operated a delivery

facility on the portion of Jackson's land that was adjacent to the railroad crossing, and the facility was visible from the railroad crossing. The lease was filed in the official deed records of Bartow County. The lease contract explicitly stated that the Jacksons were granting Buckeye the right of egress and ingress across the driveway and railroad crossing to get to the property. During the term of the lease, trucks regularly used the driveway and the railroad crossing as a means of ingress and egress to Highway 113. Buckeye placed prominent signs at the railroad crossing with instructions for its drivers coming and going over the tracks.

David Archer testified as an expert on the history of Jackson's land and the driveway that served it. Archer is a local historian and attorney who is familiar with the land and deed records of Bartow County back to the 1830s, and who has personal experience with the history of the Jackson's land. Archer testified that he had concluded, based upon his examination of land records, that CSX had obtained the land for its tracks and the railroad crossing near Jackson's property through adverse possession. He further testified that there was no owner of record over the driveway leading to Jackson's property and that, in his opinion, Jackson had obtained prescriptive rights in the driveway and railroad crossing.

4

In 2007, when the DOT eliminated the driveway leading from Jackson's driveway to Highway 113 during highway improvements, it did not contact Jackson prior to eliminating the driveway or compensate him in any way. Jackson filed the present lawsuit seeking damages for inverse condemnation of his property interest in the driveway.

Following the close of evidence, the DOT moved for a directed verdict on the ground that Jackson had failed to put CSX on notice of his adverse claim to a prescriptive easement across the railroad crossing. The trial court denied this motion, and the jury awarded a verdict in favor of Jackson. The trial court denied the DOT's motion for judgment notwithstanding the verdict. The DOT appeals from the denial of those motions.

In its sole enumeration of error, the DOT argues that the trial court erred in denying its motions for directed verdict and for a judgment notwithstanding the verdict because Jackson failed to prove a prescriptive easement over the railroad crossing. The DOT asserts that Jackson failed to show that CSX was on notice that his use of the railway was adverse, rather than permissive.[1]

---

[1] "An owner's acquiescence in the mere use of his road establishes, at most, a revocable license." (Citation omitted.) *Eileen B. White & Assosc. v. Gunnells*, 263 Ga. 360, 362 (434 SE2d 477) (1993).

"An inverse condemnation claim arises when the governmental entity creates a condition on private property . . . that amounts to a taking without compensation." (Punctuation and footnote omitted.) *Solid Equities, Inc. v. City of Atlanta*, 308 Ga. App. 895, 897 (2) (710 SE2d 165) (2011). Jackson claims to have acquired a property interest over the railroad's portion of the driveway through prescriptive easement. The DOT, on the other hand, argues that Jackson does not have a property interest in the railroad crossing, but instead has only a revocable license.

Whether a plaintiff has established a prescriptive easement over a roadway is a factual question. *Pichulik v. Ball*, 270 Ga. App. 656, 661 (2) (607 SE2d 247) (2004). "Just as fee simple title to land can be acquired by prescription, so too can an easement." *Chancey v. Ga. Power Co.*, 238 Ga. 397, 398 (1) (233 SE2d 365) (1977). "Prescriptive rights must be strictly construed, and the party asserting such rights must satisfy certain established criteria." (Footnote omitted.) *Pichulik*, supra. To establish a prescriptive claim to the driveway, including CSX's railroad crossing, Jackson bore the burden of showing that his "uninterrupted use of [the roadway] for seven or more years, the way was not over twenty feet wide, and that he has kept the way open and in repair for at least seven years." (Citation and punctuation omitted.) *Trammell*, supra at 505 (1). See OCGA §§ 44-9-1; 44-9-40 (a). Our Supreme Court

6

has held that the requirement that a prescriber keep the roadway in repair "originated in an age when private ways were unpaved and of necessity had to be repaired in order that the use thereof might be continued." *Eileen B. White & Assocs.*, supra at 360. Accordingly, our Supreme Court has concluded that the "keeping in repair" requirement to establish a prescriptive easement "does not mean . . . that it is incumbent upon the prescriber to make repairs where none is needed." (Citation omitted.) Id. at 361. Rather, the prescriber must "give some notice [of his adverse use], actual or constructive, to him against whom he intends to prescribe. The gist of the requirement as to repairs is not so much the repairs as the *notice* which is given by the repairs." (Citation and punctuation omitted; emphasis in original.) Id. Accord *Waters v. Ellzey*, 290 Ga. App. 693, 697 (3) (660 SE2d 392) (2008) (a prescriber cannot prove that he owns a prescriptive easement if he has failed to show that his use of the property sought to be prescribed was adverse rather than permissive). "The notice required is notice of the assertion of an adverse use, under claim of right, as distinguished from mere permissive use." (Punctuation and footnote omitted.) *De Castro v. Durrell*, 295 Ga. App. 194, 202 (2) (b) (671 SE2d 244) (2008).

Citing to *Yawn v. Norfolk Southern R. Co.*, 307 Ga. App. 849 (706 SE2d 197) (2011), the DOT argues that Jackson had not given notice to CSX, by repairs or

7

otherwise, of his adverse claim to the railroad crossing. In *Yawn*, this Court upheld a grant of summary judgment to a railroad denying that Yawn had a prescriptive easement over a railroad crossing even though Yawn and his predecessors in title had used the railroad crossing for 75 years with no objection, as he had not given notice to the railroad, through repairs or otherwise, that he had changed from a permissive licensee to a person claiming a prescriptive right. Id. at 852 (2).

In the present case, unlike in *Yawn*, no evidence was presented at trial showing that Jackson's use of the railroad crossing originated by permission of CSX or any of its predecessors. Further, unlike in *Yawn*, Jackson has provided evidence sufficient to support the jury's finding that CSX was on notice of his adverse use of the railroad crossing. See *Trammell*, supra. (the trial court's denial of motions for a directed verdict or for a judgment notwithstanding the verdict are reviewed under the 'any evidence' standard). Jackson provided expert testimony that the 1985 lease of Jackson's property to Buckeye Gas Products, which contained an explicit grant of the right of ingress and egress of the driveway and was recorded in the deed records of the Superior Court, provided constructive notice that he was claiming a right of ownership over the driveway and railroad crossing and leasing that right to a third party. Such notice of an adverse claim was also provided by the open and obvious

nature of that company's active operations, including the size of its facility, the close proximity to the railroad crossing, the regular movement of trucks over its driveway and its prominent posting of signage with instructions to its drivers coming and going over the tracks. Further, there was evidence that the railroad had notice of the adverse nature of Jackson's use and claim of right over the railroad crossing when it restored and upgraded the tracks in the 1970s. The record shows that CSX sought permission from Jackson to expand its tracks and replaced the track crossing after upgrading its rail. This evidence was sufficient to support the jury's finding that Jackson had acquired a prescriptive easement over the railroad crossing and thus was entitled to compensation from the DOT when the DOT took that property interest from him by closing the driveway. See *Trammell*, supra at 507 (1).

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*