## A11A1244. McGREGOR et al. v. RIVER POND FARM, LLC.

(719 SE2d 546)

ADAMS, Judge.

River Pond Farm, LLC sued to enjoin the appellants from interfering with its alleged easement on the appellants' property. The appellants counterclaimed to quiet title and, without requesting a jury trial, asked the superior court to submit the matter to a special master pursuant to OCGA § 23-3-63. After both parties filed motions for summary judgment, the special master issued a report finding a prescriptive easement in favor of River Pond. Over an objection by the appellants, the superior court affirmed the special master's findings, adopted them as its own, and issued a judgment in favor of River Pond.

Most of the facts are not in dispute. R. C. Howell died in 1968 owning significant acreage along the Chattahoochee River in Early County. The parties to this suit agree that they are the successors in interest, respectively, of land held by Howell's two daughters — Louise Howell Gay and Grey Howell Bell — who inherited their father's land and, in 1972, divided it roughly equally between them. The appellants are trusts, owned by Robert Lamar McGregor, Sr., and Patricia Gay McGregor, that are successors in interest to over 700 acres of land acquired by Patricia's mother, Louise Howell Gay (the McGregor property). And since September 2004, River Pond, an entity formed by Grey Howell Bell's children, has been the successor in interest to over 700 acres of land located immediately south of the McGregor property that Grey Howell Bell received when the property was divided (the Bell property). A road runs from northeast to southwest across the McGregor property to the Bell property, providing a route from County Route 81, a/k/a "Old River Road," to the Bell property. The road existed in 1968 and before, and it exists essentially unchanged today in the same location;[1] but neither the road nor any related easement was mentioned in the deeds that divided the property. The owners of the Bell property, including River Pond, have used the road to access the Bell property since the division, and they maintained the road at their own expense since 1968, all with full knowledge of the McGregors.[2] Members of the Bell family also hunted on the McGregor property this entire time, and as far back as when R. C. Howell owned all the land.

---

[1] The McGregors do, however, contend there is an issue of fact regarding the width of the road and whether the width has been changed since 1972.

[2] On appeal, the appellants at times appear to argue that there is no evidence of any repairs during the early years after the property was divided, but Patricia McGregor has admitted that the Bell family used and maintained the McGregor property and roads from 1972 through 1988.

The parties' dispute concerns the exact nature of the origin and development of the arrangement whereby the Bell family used the road and hunted on the McGregor property.

1. When River Pond sued to remove a gate that the McGregors erected blocking the road to the Bell property, the McGregors counterclaimed for "quia timet against all the world" pursuant to OCGA § 23-3-60 et seq. Those Code sections provide that the issue may be submitted to a special master who has jurisdiction to review the evidence and submit findings to the court:

> [T]he special master shall have complete jurisdiction within the scope of the pleadings to ascertain and determine the validity, nature, or extent of petitioner's title and all other interests in the land, or any part thereof, which may be adverse to the title claimed by the petitioner, or to remove any particular cloud or clouds upon the title to the land and to make a report of his findings to the judge of the court[.]

OCGA §§ 23-3-66; 23-3-63.

Under this law, the McGregors had the right to demand a jury trial of any question of fact; the special master could also request a jury to try issues of fact. OCGA § 23-3-66. But because the McGregors failed to file a jury demand before the special master heard the case, the special master became "the arbiter of law and fact." *Thornton v. Reb Properties*, 237 Ga. 59 (226 SE2d 741) (1976), cited with approval in *Addison v. Reece*, 263 Ga. 631, 632 (1) (436 SE2d 663) (1993). Although the special master does not divest the trial court of overall jurisdiction of the case, *Harbuck v. Houston County*, 284 Ga. 4, 5 (1) (662 SE2d 107) (2008), once the trial court adopts the special master's findings and enters judgment, the court's decision is upheld by the appellate court unless clearly erroneous. *Nelson v. Georgia Sheriffs Youth Homes*, 286 Ga. 192, 193 (686 SE2d 663) (2009). "Therefore, if there is any evidence supporting the judgment of the trial court, it will not be disturbed." (Citation omitted.) *Cernonok v. Kane*, 280 Ga. 272, 273 (1) (627 SE2d 14) (2006). But conclusions of law are reviewed de novo. *Second Refuge Church &c. v. Lollar*, 282 Ga. 721, 724 (2) (653 SE2d 462) (2007).

2. Here, the special master found that the use and maintenance of the road by River Pond, its agents, and its predecessors in title for at least 20 years (from 1968 to 1988, i.e., dating back to before the property was divided), being known to the McGregors, and *without seeking permission and without objection by the McGregors*, presented adverse notice to the McGregors that the users intended to use the road as their own. The special master also found that the law only requires seven years of such action and that any actions adverse

to their claim of easement taken by River Pond or its predecessors in interest after seven years of such use could not cause a forfeiture or abandonment of an established prescriptive easement.[3] The trial court adopted the facts as found by the special master and found that the special master's report was consistent with the evidence presented at the November 4, 2008 hearing on the temporary restraining order and the hearing on the motion for summary judgment, neither of which the special master witnessed. The court then affirmed and incorporated the report of the special master in a final judgment, purportedly granting summary judgment in favor of River Pond, and finding that River Pond had a prescriptive easement across the McGregor property. The court also granted the McGregors' action to quiet title with regard to all possible claims other than the prescriptive easement.

More specifically, on the law, the special master cited four well-known requirements for a prescriptive easement: uninterrupted use for seven years or more; the width of the easement does not exceed twenty feet; the width did not deviate from the original width; and that the plaintiff kept the easement open and in repair for seven uninterrupted years. See generally *Jackson v. Norfolk Southern R.R.*, 255 Ga. App. 695 (566 SE2d 415) (2002); OCGA § 44-9-54. But the special master failed to address the critical legal issue in the case that necessarily arises because the evidence is undisputed that use and maintenance of the road by River Pond's predecessors in title originated when all the land was jointly owned by R. C. Howell or his estate. River Pond admits this fact; it even specifically asserts that it and its predecessors in title "had an easement since Mr. Robert Claude Howell died," and the special master found that the Bells' use *and maintenance* of the road on the McGregor property began in 1968. But *prescriptive* use could not have begun on the road prior to when the property was divided.[4] Cf. *Bowen v. Lewis*, 201 Ga. 487, 493 (2) (40 SE2d 80) (1946) (property owner cannot have easement in a way on his own property that he owned in fee); *Duncan v. Sluder*, 204 Ga. 458, 461 (1) (50 SE2d 78) (1948) (use of common drive by tenants on property owned by single landowner

---

[3] There is a hunting agreement in the record, prepared by Tommy Bell, dated 1988, that allows the Bells to hunt on the McGregor property, and it has a provision requiring the Bells to maintain the roads on the McGregor property. Also, Tommy Bell, one of the members of River Pond, made comments in writing in 2002 indicating that the Bells would need an easement or a different road if the McGregors sold their property. He also wrote to Patricia McGregor in 2007, "I appreciate you letting us have access and hunt your property over these many years and helping you manage your timber."

[4] River Pond does not contend that the Bells had other property separate from that acquired through Grey Howell Bell, from which they had access to the road on the undivided R. C. Howell estate holdings.

was permissive until property divided).

Thus, prior to the property division in 1972, all use of the road by the descendants of R. C. Howell was necessarily permissive. In addition, Patricia McGregor, who was present for the 1972 property division and signed some of the relevant documents, gave virtually unrebutted testimony that on the day the property was divided, she and her mother gave express permission to C. A. Bell and his family to use the road and added that, in return, the Bell family was expected to continue to watch over and maintain the property and maintain the road.[5] Under these facts, an exception to the above four requirements for a prescriptive easement must be considered.

"Permissive possession cannot be the foundation of a prescription until an adverse claim and actual notice to the other party." OCGA § 44-5-161 (b). "When the use of a private way originates by permission of the owner, prescription does not begin to run until the user notifies the owner, by repairs or otherwise, that he has changed his position from that of a mere licensee to that of a prescriber. [Cit.]" (Punctuation omitted.) *Keng v. Franklin*, 267 Ga. 472, 472-473 (480 SE2d 25) (1997). See also *Yawn v. Norfolk Southern Ry. Co.*, 307 Ga. App. 849, 852 (2) (706 SE2d 197) (2011). And, although "the most common and effective way of giving notice of a claim of right is to maintain and repair the way," *Thompson v. McDougal*, 248 Ga. App. 270, 271 (546 SE2d 44) (2001), when performed with permission of the landowner, even repairs to a road are insufficient, standing alone, to provide notice of adverse use:

> [I]f the use of and the repairs made on the road by the plaintiff were by [the] permission of the landowner, as was his first right to use it, then, in such circumstances the plaintiff would not acquire a prescriptive right or title to the road in question.

*Burnum v. Thomas*, 71 Ga. App. 690, 694 (31 SE2d 925) (1944). See also *Ponder v. Williams*, 80 Ga. App. 145, 151 (2) (55 SE2d 668) (1949) (no prescriptive easement where use and repairs of road began with permission of landowner). This is so because the repairs must provide notice of adverse use; and repairs by permission are not adverse and therefore not prescriptive. In order for repairs begun with permission to constitute notice of adverse use, something about

---

[5] There is evidence in the form of the affidavit of C. A. Bell, Grey Howell Bell's husband, that he was never given verbal or written permission to use, maintain or repair the road from R. C. Howell, Louise Howell Gay, Patricia Gay McGregor or anyone else. But one month prior to signing that affidavit, C. A. Bell testified that he did not remember anything that was done or said in connection with the August 1972 division of the property.

use of the road, the repairs, or the parties' statements or actions regarding their relative rights must provide the landowner with notice of adverse use. "The gist of the requirement as to repairs is not so much the repairs as the notice which is given by the repairs." (Citation and punctuation omitted.) *Nelson v. Girard*, 215 Ga. 518, 520 (2) (111 SE2d 60) (1959) ("repairs were done through the years under the agreement permitting the [claimant] to use the road and to repair it" showed no adverse use and could not result in a prescriptive easement). In this case, there is no indication in either the report of the special master or the trial court's orders that this law was considered, and therefore the decision of the special master was not based on the correct law.

Moreover, "[p]rescriptive rights are to be strictly construed, and the prescriber must give some notice, actual or constructive, to the landowner he or she intends to prescribe against." (Citation and punctuation omitted.) *MEA Family Investments, LP v. Adams*, 284 Ga. 407, 408 (667 SE2d 609) (2008). Under the applicable law, and given that the use, including repair, of the road began with permission, the special master's finding that River Pond and its predecessors in title never *asked* for permission and that the McGregors *never objected* to their activities from 1968 to 2008[6] is inadequate to establish the adverse notice necessary to establish an easement by prescription. See *Douglas v. Knox,* 232 Ga. App. 551, 552-553 (2) (502 SE2d 490) (1998) ("That a property owner knows of and acquiesces in the use of his private way is insufficient to establish prescription."). The special master failed to determine whether the original use, although permissive, changed to adverse use at some point based upon a notice of adverse use by the Bell family or River Pond. For the above reasons, the special master's conclusion that River Pond had acquired an easement by prescription was not based on an application of the complete law applicable to the case. "Where it is apparent that a trial court's judgment rests on an erroneous legal theory, an appellate court cannot affirm." (Citation omitted.) *Gwinnett County v. Davis*, 268 Ga. 653, 655 (492 SE2d 523) (1997) (in trial court's order following bench trial, trial court relied on evidence, which standing alone, was not sufficient to support the trial court's legal conclusion). See also *Capers v. Camp*, 244 Ga. 7, 12 (4) (257 SE2d 517) (1979) (where the special master in a quia timet proceeding committed a reversible error, the trial judge errs by adopting the

---

[6] The special master also found that River Pond's contractors performed work on the McGregor property "without permission" from the McGregors. But this finding is not relevant for two reasons. First it is not relevant in time because the statements occurred 12 years or more after the property was divided. Second, the contractors were given their assignments by the Bells and River Pond, not the McGregors.

special master's findings of fact and conclusions of law).

3. River Pond argues that we could affirm on a separate ground by finding an easement by implication, but that issue is not before us. The superior court's judgment granted the McGregors' claim for quia timet "as to all other persons and claims, except the prescriptive easement of the Plaintiff," and River Pond has not filed a cross-appeal. "The general rule is that an appellee must file a cross-appeal to preserve enumerations of error concerning adverse rulings. [Cits.]" *Georgia Society of Plastic Surgeons v. Anderson*, 257 Ga. 710, 711 (1) (363 SE2d 140) (1987). And because a ruling on an easement by implication is not material to a ruling on a prescriptive easement, we find no grounds to stray from the general rule here. Id.

4. The McGregors argue that we must not only vacate the grant of a prescriptive easement in favor of River Pond but also quiet title in their favor. They point to the special master's finding that beginning in 1968, the Bells' and River Pond's use of and repairs to the road remained unchanged for 20 years thereafter. They argue that since the repairs began with permission and continued unchanged thereafter, it necessarily follows that the use remained permissive the entire time, thereby defeating any claim of prescriptive easement.

We conclude, however, that due to the procedural posture of the case, a remand to the trial court and the special master is required. Cf. *Burnum*, 71 Ga. App. at 694 (trial court correctly remanded to ordinary for new trial on issue of whether use and repairs of road began with permission). As shown above, under OCGA § 23-3-60 et seq., the special master in this case functioned as "the arbiter of law and fact," of the issues before him, which were disputed, and the trial court adopted those findings of fact. Although the parties filed cross-motions for summary judgment and the trial court purportedly granted summary judgment based on the special master's report, a judgment issued based on factual findings arising out of disputed facts is not summary judgment. It was more akin to findings following a bench trial. Under these circumstances, the trial court's grant of a prescriptive easement must be vacated and the case remanded because we cannot determine what the special master would have concluded if he had considered the correct law. See *Gwinnett County*, 269 Ga. at 655.

We therefore vacate the trial court's award of a prescriptive easement in favor of River Pond and remand for the special master to reconsider its decision in light of the applicable legal authority, including that cited above.

*Judgment vacated and case remanded with direction. Barnes, P. J., and Blackwell, J., concur.*

DECIDED NOVEMBER 16, 2011.

*Vansant & Corriere, Alfred N. Corriere*, for appellants.
*Jesse G. Bowles III*, for appellee.