**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT. ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**September 18, 2020**

# In the Court of Appeals of Georgia

A20A1225. WILKES 581 FARMS, LLC v. MCAVOY.

MARKLE, Judge.

This appeal arises from a dispute between Wilkes 581 Farm, LLC (Wilkes) and Henry P. McAvoy (McAvoy) concerning a farm road to which McAvoy claims to have a prescriptive easement and across which Wilkes installed a chained gate. Following a trial, the jury found in McAvoy's favor. Wilkes now appeals, contending that the trial court erred in denying its motion for directed verdict because McAvoy failed to establish he held a prescriptive easement for the road. We agree, and therefore reverse.

> "[O]n appeal from the denial of a motion for a directed verdict. . . , we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence

to support the jury's verdict. However, we review questions of law de novo, applying the plain legal error standard of review.

(Citations and punctuation omitted.) *Southland Propane, Inc. v. McWhorter*, 312 Ga. App. 812, 813 (720 SE2d 270) (2011).

So viewed, the record shows that the parties, who own neighboring tracts of land, dispute ownership and usage of a road in Wilkes County. The road runs from the boundary of McAvoy's property and continues half a mile across the Wilkes property.

Prior to 1981, the Wilkes's property had various owners. During that time, many land owners and farmers used the road. In 1981, William Murphy purchased the property, passing it to his son, Jett Murphy (collectively "Murphy"), some time before 2014. McAvoy owned the neighboring lot.[1] Although the general public had stopped using the road by the time Murphy purchased the land, Murphy placed a locked gate across the roadway. Nevertheless, Murphy gave the key or lock combination to McAvoy and his foresters and allowed them to use the road to transport McAvoy's timber harvest or for other farming purposes. When the foresters were ready to harvest the timber, they would let Murphy know, as a courtesy, but at no time did

---

[1] McAvoy's property is also referred to as the Orr tract.

2

McAvoy or the foresters ask permission to use the road. Murphy instructed them that they were free to use the road as long as they left it the way they found it. McAvoy continued to use the road to haul timber in 1995, 2011, and 2013.

McAvoy helped maintain the road to keep it open and usable between 1981 and 1995. He mowed the road a few times and made repairs over the years. And he made sure the land was in good repair after he used it for each timber harvest. When Murphy owned the land, he also leased it to hunters, and the hunters performed maintenance on the road during their use. In addition, Murphy maintained and repaired the road, or asked McAvoy's foresters to do it.

In 2014, Wilkes acquired the land from Murphy. The sales contract made no mention of an easement for the road. Wilkes continued to lease the land to hunters, and Wilkes personally used the road to access his home and other parts of the property, and permitted his foresters to use the road as well. Wilkes also allowed McAvoy's foresters to use the road to check on McAvoy's timber. After taking possession of the property, Wilkes maintained the road.

In 2016, upon learning that McAvoy wanted to use the roadway to haul timber off his property, Wilkes refused to allow McAvoy access. Instead, Wilkes installed a chained gate across the road to prevent McAvoy's further use of it.

McAvoy then brought an action in the Probate Court of Wilkes County to establish a prescriptive easement over the roadway. The probate court ruled in his favor, and Wilkes appealed to the Superior Court of Wilkes County. The case proceeded to trial, and, at the close of McAvoy's evidence, Wilkes moved for a directed verdict, which the trial court denied. The jury found in favor of McAvoy, and this appeal followed.

In related arguments, Wilkes asserts that the trial court erred in denying its motion for directed verdict because McAvoy failed to prove the essential elements required to establish a prescriptive easement across the road on Wilkes's land. Specifically, Wilkes asserts that (a) McAvoy originally had permission to use the road; (b) he has failed to show that his use was continuous, exclusive, and uninterrupted; and (c) McAvoy has failed to establish an adverse use or maintenance of the road such as would constitute notice of his prescriptive rights to it. We agree.

> Georgia law recognizes the ability to obtain a private way over the land of another from prescription by seven years' uninterrupted use through improved lands . . . . The burden of establishing prescriptive title lies on the plaintiff. In order to establish the existence of a private way over [Wilkes's] land, [McAvoy was] required to show (1) that [he], or a predecessor in title, had been in uninterrupted use of the alleged private way for the period of time required by OCGA § 44-9-1; (2) that the

4

private way is no more than twenty feet wide, and that it is the same twenty feet originally appropriated;[2] and (3) that [he has] kept the private way in repair during the period of uninterrupted use. Moreover, a claim of prescriptive title requires proof that the possession did not originate in fraud and was (1) public; (2) continuous; (3) exclusive; (4) uninterrupted; (5) peaceable; and (6) accompanied by a claim of right. The use must also be adverse rather than permissive. However, to allow a person to acquire prescriptive rights over the lands of another is a harsh result for the burdened landowner. Thus, Georgia courts have strictly construed the elements of OCGA § 44-9-1 against the party who asserts a right of entry over the lands of another. If the prescriber fails to show any of the elements necessary to establish prescriptive rights, he cannot recover.[3]

(Citations and punctuation omitted.) *Floyd v. Chapman*, 353 Ga. App. 434, 436-437 (1) (838 SE2d 99) (2020). The evidence reveals that McAvoy has not met his burden of establishing a claim for prescriptive easement.

(a) *Acquiescence*

---

[2] The parties stipulated that the road in dispute did not exceed 20 feet in width. Also, there is no evidence that the location of the road shifted during McAvoy's use of it. Thus, these are not issues on appeal.

[3] A general review of the parties' briefs, as well as the probate and trial court's treatment of the case, shows that the road at issue was over improved lands, and thus the seven-year prescribed use under OCGA §§ 44-9-1; 44-9-54 is applicable.

5

First, Wilkes argues that McAvoy's use of the road originated as a permissive or acquiesced use of a community farm road, and thus McAvoy cannot acquire prescriptive rights to the road. A review of the evidence reveals that McAvoy's use of the road, at the very least, was by acquiescence.

Under Georgia law,

> [t]hat a property owner knows of and acquiesces in the use of his private way is insufficient to establish prescription. An owner's acquiescence in the mere use of his road establishes, at most, a revocable license. To establish a prescriptive easement over the private property of another pursuant to OCGA § 44-9-1, it is necessary to show that the owner was given notice that the user intended to appropriate it *as his own*.

(Citations and punctuation omitted; emphasis supplied.) *Douglas v. Knox*, 232 Ga. App. 551, 552 (2) (502 SE2d 490) (1998); see also *McGregor v. River Pond Farm, LLC*, 312 Ga. App. 652, 656 (2) (719 SE2d 546) (2011) (special master's finding that farm and its predecessors in title never asked for permission, and the McGregors never objected, was inadequate to establish the adverse notice necessary to claim a prescriptive easement). Permissive use of the road may only ripen into prescription if McAvoy gave notice that his use was adverse to the property owner. *Pichulik v. Ball*, 270 Ga. App. 656, 661 (2) 607 SE2d 247) (2004).

6

Here, it is undisputed that McAvoy's and his predecessors's use of the road pre-dates Wilkes's purchase of the land, and that, prior to Wilkes's purchase in 2014, the use of the road was based on a common understanding between all affected landowners. McAvoy testified that he never asked for permission to use the road, nor was his access to it blocked prior to 2016. He also testified that neither he nor his foresters sought Murphy's permission to use the road, but that it was their practice to inform him of their use simply as a courtesy. However, the evidence further showed that Murphy was aware of McAvoy's use of the road, and did not prevent it. And, after Murphy installed a gate across it, he gave McAvoy access to the locked gate to use the road. In fact, one of the foresters testified that Murphy informed him it was permissible for him to use the road so long as it was left the way it was found. There is thus no evidence of an adverse use. The record shows only that Murphy acquiesced in McAvoy's shared use of the road, and such acquiescence is insufficient to establish a prescriptive easement. *Pichulik*, 270 Ga. App. at 661 (2); *Douglas*, 232 Ga. App. at 552 (2).

(b) *Exclusivity*

Moreover, McAvoy failed to prove that his use was exclusive. An assertion that the road was common and available to others "negates [McAvoy's] claim to a

prescriptive easement barring some evidence showing [he] provided notice by repairs or otherwise, that he has changed [his] position from that of a mere licensee to that of a prescriber." (Citation and punctuation omitted.) *Andrews v. Habitat for Humanity in Atlanta, Inc.*, 295 Ga. App. 392, 393 (671 SE2d 879) (2008); see also *Pichulik*, 270 Ga. App. at 661-662 (2) (appellants could not establish prescriptive easement over driveway where evidence showed their use was shared and not exclusive).

Here, there is no dispute in the evidence that many others used the road beside McAvoy. McAvoy admitted that he did very little maintenance on the road during the time the hunters used it because they were maintaining it for their own use, and prior to that, he maintained the road for himself as well as others. This assertion negates McAvoy's claim to a prescriptive easement based on exclusive use. *Andrews*, 295 Ga. App. at 393.

(c) *Adverse use*

Finally, there was no evidence that McAvoy's use of the road was adverse. Again, establishment of a prescriptive easement requires a showing that "the owner was given notice that the user intended to appropriate [the land] as his own." (Citations omitted.) *Douglas*, 232 Ga. App. at 552 (2). "[P]rescription does not begin to run until the user notifies the owner, by repairs or otherwise, that he has changed

his position from that of a mere licensee to that of a prescriber." (Citation omitted.) *Hobbs v. Lovelady*, 272 Ga. App. 111, 112 (1) (611 SE2d 661) (2005).

> The gist of the requirement as to repairs is not so much the repairs as the *notice* which is given by the repairs. The crux of the requirement for repairs lies not in the actual effectuation of repairs by the prescriber but in the notice of adverse use the performance of such repairs would give to the property owner.

(Citations and punctuation omitted.) *Ga. Pacific Corp. v. Johns*, 204 Ga. App. 594, 595 (420 SE2d 39) (1992). Mere use of a roadway is not enough to acquire prescriptive rights. *BMH Real Estate Partnership v. Montgomery*, 246 Ga. App. 301, 304 (3) (540 SE2d 256) (2000). Likewise, "mere acts of keeping grass out of or passing over the [road] cannot accomplish prescription[.]" (Citation omitted.) *Andrews*, 295 Ga. App. at 393.

McAvoy has not shown that his use of the road was adverse. McAvoy testified that he and his family used the road in the 1970s to early 1980s as needed for farming purposes, and that he continued to use the road for timber harvests in 1995, 2011, and 2013. But this use is insufficient to establish a prescriptive easement. *BMH Real Estate Partnership*, 246 Ga. App. at 304 (3). As set forth above, the evidence showed that others used the road as well during these times. Notably, when Murphy installed

locked gates on the road, McAvoy did nothing to remove the gate or to prevent others from accessing the road.[4] McAvoy's inaction in this regard does not evidence an intention to appropriate the land as his own. *Douglas*, 232 Ga. App. at 552 (2); *McGregor*, 312 Ga. App. at 656 (2).

As for repairs, the evidence showed that any repairs McAvoy's foresters performed or would have performed were done with Murphy's permission. Repairs performed with the owner's permission or by agreement cannot establish a prescriptive easement. See *McGregor*, 312 Ga. App. at 655-656 (2); *Nelson v. Girard*, 215 Ga. 518, 519-520 (2) (111 SE2d 60) (1959); see also *Norfolk Southern R. Co. v. Dempsey*, 267 Ga. 241, 242 (1) (476 SE2d 577) (1996). As such, there was no evidence establishing that McAvoy's use of the road was adverse. *Douglas*, 232 Ga. App. at 552 (2); see also *McGregor*, 312 Ga. App. at 656 (2).

For all these reasons, McAvoy failed to prove the essential elements required to establish a prescriptive easement over the road, and therefore the trial court erred in denying Wilkes's motion for a directed verdict. *Southland Propane*, 312 Ga. App. at 813. Accordingly, we reverse the trial court's judgment.

---

[4] Interestingly, in 1989 when McAvoy had a plat of the land at issue prepared, he had the opportunity to establish a prescriptive easement over the road, but did not do so.

*Judgment reversed. McFadden, C. J., and Colvin, J., concur.*