**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 27, 2026**

# In the Court of Appeals of Georgia

A26A0141. MARKS v. CATES.

BARNES, Presiding Judge.

We granted the application of defendant Alexander Marks for interlocutory review of the trial court's denial of summary judgment concerning his claimed easement as to a driveway built by his predecessors in 1987. The estate of the abutting landowner, now the Cates family, brought this action for trespass in 2023. On appeal, Marks argues that the trial court erred in denying him summary judgment because undisputed evidence established his right to the driveway as a private way by prescriptive easement. We agree and reverse.

> [A] defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case.

> Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

*Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted). "In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." Id. at 624 (1) (a) (citation and punctuation omitted).

Thus viewed in Cates's favor, the record shows that in in 1979, Marks's predecessor, the Beatty family, bought a 5-acre tract of land abutting the 35-foot strip of land at issue, which was the property of G. E. "Buddy" Monk. The Beattys built an east-west driveway on the strip in approximately 1987, and completed a house on their property in 1990. From 1979 to 1992, the large tract to the east of the Beattys' property was also owned by Monk. During this period, Monk often visited the Beattys and never objected to the driveway or the Beattys' use of it. Monks died in 1992, and his daughter Sherry Cates became the executor of his estate. In 1997 or 1998, the Beattys built a carport near the eastern end of the driveway.

Jerry Beatty died in 2008. Shortly after her husband's death, Betty Jean Beatty found Sherry's husband Steve Cates on the driveway inspecting the carport. When Betty Jean asked what he was doing, Steve said that he planned to move the carport so that he could log the Monk property. Betty Jean told him that he could not move the carport and that he should leave her alone.

Nothing further was heard from the Cateses until September 2023, more than four years after Alexander Marks bought the property from Betty Jean Beatty, when Sherry Cates filed this trespass action. Marks counterclaimed for a declaration of his right to the driveway by adverse possession and prescriptive easement. In February 2024, Marks moved for partial summary judgment on his adverse possession counterclaim. In March 2024, Marks filed a second motion for partial summary judgment as to prescriptive easement of a private way and as to his defense of laches.

The Cateses responded to Marks's first motion with evidence including five affidavits purporting to show that the Beattys' use of the driveway had been merely permissive. Two of the affidavits were by Sherry and Steve Cates; the remaining three are identical except for the names of the signatories. Steve Cates testified that he had used the driveway "to prevent trespassers and vandalism and [for] hunting

3

purposes," that he had never been informed that the Beattys claimed ownership of it, and that Betty Jean "did not object" to his assertion of right over the property. Steve admitted, however, that Monks had "allow[ed] the Baty's [sic] to temporarily use [the driveway strip] for a carport." The remaining three affidavits averred that each witness had seen "Jerry [Beatty] coming to the office of PKW Building Suppply [sic]" to deliver office supplies, "at which time [Beatty] freely and voluntarily admitted that he was using the [driveway] with the consent of . . . Monk and [that] he would be required to return the use of this property when [Monk] requested him to do so." None of the three affidavits state where PKW Building Supply is, whether each witness was a worker or a customer there, or why Beatty would have been talking about his driveway with them. Marks moved to strike the affidavits as impermissible hearsay, notwithstanding Monks's death.

After a hearing, the trial court filed two orders. The first denied Marks's first motion for summary judgment on the ground that questions of fact remained as to his adverse possession claim. The second denied Marks's second motion for summary judgment, finding that questions of fact remained as to whether the Beattys' use of the property was permissive and thus whether laches barred Cates's claim. The trial court

did not specifically rule, however, on Marks's claim for a prescriptive easement, finding only that "multiple issues of material fact" remained. The trial court granted a certificate of immediate review, and we granted Marks's application for interlocutory review.

Marks's application raised a question only as to the trial court's holding as to a prescriptive easement. Likewise, his brief on appeal asserts error only as to this issue, arguing that undisputed evidence shows that he obtained a prescriptive easement as to the driveway.

Under Georgia statutory law, "[w]henever a private way has been in constant and uninterrupted use for seven or more years and no legal steps have been taken to abolish it, it shall not be lawful for anyone to interfere with that private way." OCGA § 44-9-54. See also OCGA § 44-9-1. To obtain a prescriptive easement providing ingress and egress to his or her property over the land of another, a property owner must show that: (1) he or she used the easement without interruption for at least seven years; (2) the width of the easement does not exceed 20 feet; (3) the width and path of the easement never varied over the prescription period; and (4) the landowner kept the easement open and in good repair during the prescription period. See *McGregor*

*v. River Pond Farm, LLC*, 312 Ga. App. 652, 654 (2) (719 SE2d 546) (2011); *Revocable Trust of Timothy W. Griffin v. Timberlands Holding Co. Atlantic*, 328 Ga. App. 33, 37 (2) (761 SE2d 458) (2014). Moreover, the use of the easement must be of such a nature that the property owner is put on notice that the user intends to appropriate the land on which the easement sits as his own. See *Douglas v. Knox*, 232 Ga. App. 551, 552-553 (2) (502 SE2d 490) (1998). Generally, this notice requirement is satisfied where the user maintains and makes any repairs necessary to facilitate the easement's use. See *Griffin*, 328 Ga. App. at 38 (3) ("the gist of the requirement as to repairs [and maintenance] is not so much the repairs [and maintenance] as the notice which is given by the [same]") (citation, punctuation and emphasis omitted). Finally, successive possessions may be tacked together to meet the required prescriptive period. OCGA § 44-5-172; see *Pineda v. Lewis*, 369 Ga. App. 346, 348 (1) (893 SE2d 512) (2023).

Here, the uncontroverted evidence showed that Marks acquired a prescriptive easement by private way over the driveway. The driveway is used to access the Beatty/Marks property from a public roadway; it was used exclusively and continuously by the owners of that property for 36 years without objection from Monk

6

or his heirs; the driveway's path and width has remained unaltered since it was first established in 1987; the width of the driveway has never exceeded 20 feet; the Beattys improved the driveway by clearing, grading, and paving it; and since 1987, the driveway has been improved, repaired and/or maintained continuously by the owners of the Beatty/Marks property. Moreover, although Cates presented some evidence that the Beattys' use of the driveway was permissive, that evidence showed only that permission was given, if at all, by Buddy Monk. Any permissive use would have ended at the time of Monk's death in April 1992, at which point prescriptive use would have begun.

In addition, undisputed evidence showed that in the five to six years following Monk's death, the Beattys erected a carport on the eastern end of the driveway, and they also maintained part of their garden on the unpaved portion of the eastern end. Both the carport and the garden were in a location that arguably interfered with access between Monk's property and the driveway. Despite the erection of the carport, however, and though its presence arguably exceeded the alleged permissive use of the property, no representative of Monk's estate objected to this use until 2008 — more than a decade after the carport was erected. At that time, Steve Cates told Betty Jean

Beatty that the carport would need to be moved to allow access for logging trucks coming from the Monk property. Betty Jean, however, refused to allow the carport to be moved and she told Steve "to leave her alone." For the next 15 years, moreover, no one from the Monk estate attempted to interfere with Beatty's or Marks's possession and use of the driveway.

While some cases hold that permissive use is insufficient to establish a prescriptive easement, those cases involve the permissive use of or repairs to an *existing* roadway. See *Pineda*, 369 Ga. App. at 349-350 (1) (no prescriptive easement established where evidence showed that use of an existing driveway was done with the express permission of the property owner); *McGregor*, 312 Ga. App. at 655 ("when performed with permission of the landowner, . . . repairs to [an existing] road are insufficient, standing alone, to provide notice of adverse use"). See also *Keng*, 267 Ga. at 472 (prescriptive easement established where evidence showed that property owner claiming the easement used the driveway in question continuously, refused to allow its removal, and repaired a considerable portion thereof; these "actions were sufficient to place [the owners of the property on which the easement was situated] and their

8

predecessor in title on notice of [the claimant's] adverse claim to the driveway and initiate the running of the prescriptive period").

Here, by contrast, the Beattys did not avail themselves of an existing roadway on the Monk property. Instead, they were granted use of the property by Monks, built the driveway, and maintained it in good repair. Further, and more than 20 years after building the driveway, the Beattys established a portion of their garden and a carport structure on the end of the driveway closest to the Monk property, thereby hindering access to their driveway from that property. Given these undisputed facts, the Monk heirs had more than seven years' notice that the Beattys were claiming use of the property on which the driveway was situated.

Because undisputed evidence shows that Beatty and Marks gained a private right of way over the driveway by prescriptive easement, the trial court erred when it denied Marks summary judgment on this question.

*Judgment reversed. Markle and Hodges, JJ., concur.*